## WEEKS v. ROBIE.

A party who is entitled to repudiate a contract, and who wishes to rescind it, must do so distinctly and unequivocally. He can not treat the contract as binding and rescinded at the same time.

And when a party who is entitled to repudiate a contract does any act which amounts to a ratification of it, or an election to ratify and confirm it, after a full knowledge of all the facts and circumstances connected with it, he can not afterward elect to treat it as void, and rescind it.

In order to rescind a contract, the party proposing to rescind must deliver up or tender to the other party, without condition or reserve, whatever he has received under the contract, and then he must demand the money he has paid, or the property he has delivered to such other party, before suit brought in order to recover the same.

When a verdict is taken by consent it will be sustained, if there was any competent evidence on which it could have been found by the jury, while a verdict ordered by the court will be set aside if there was any evidence upon which the jury might have found the other way.

ASSUMPSIT for money had and received. The plaintiff claimed to recover the sum of $300, paid by the plaintiff to the defendant for certain securities agreed to be assigned by the defendant to the plaintiff; and a substantial part of which the defendant, as the plaintiff alleged, afterward refused to assign or deliver.

The plaintiff's evidence tended to prove that on the 20th of October, 1858, the defendant held a mortgage of real estate from David F. Moore to one Stevens, and by him assigned to the defendant, with the note thereby secured, upon which was due the sum of $300 and some interest, and also held as security for the mortgage debt, four promissory notes pledged by Moore to the defendant; that at some time prior to said October 20th, the defendant had agreed with Moore, to receive the sum of $300 in full for the mortgage debt, if paid by a certain time, and to assign the debt and mortgage, together with the four promissory notes, to any person Moore should ap-

point; that on the said 20th of October, the plaintiff, with the assent and agreement of Moore, agreed with the defendant that he should pay the $300, and receive all the aforesaid securities, and on that day did, in pursuance of that agreement, pay said sum of money to the defendant, who received it, and at the same time passed over to the plaintiff the mortgage folded up, and which the plaintiff supposed to contain the five notes above mentioned.

Upon opening the mortgage, however, it appeared that the mortgage note alone was inclosed, and upon the defendant's attention being called to it, he said he would fix that, but he would first make sure of the money, and he thereupon put it into his safe, and conversation was had in regard to the four notes, the plaintiff claiming them as part of the contract, and the defendant admitting it, but alleging that he was in danger of being charged for the notes in a suit then pending in favor of Charles A. Hacket, against said Moore as principal, and the defendant as trustee, of which the plaintiff had knowledge before. After considerable negotiation upon the subject, the defendant declined to deliver up the notes at that time, saying that he desired to take counsel as to his liability as such trustee, and the parties then separated.

The plaintiff's evidence also tended to show that after the defendant had deposited the money in the safe, he went for a pen and ink to make a transfer of the four notes to the plaintiff, but desisted, saying that it had just occurred to him that he might be held in the trustee suit for the notes; that the defendant consulted counsel on the same day, and on the next day, and still declined to deliver the notes, and on that day the plaintiff received from Moore the receipt which the defendant had given him for the four notes, and exhibited it to the defendant, and demanded the notes; to which the defendant replied that he was not yet satisfied that he should not be held as trustee; but, if he became satisfied after further con-

sultation with counsel, that he should not be held for them, he would forward them by mail to the plaintiff; that the aforesaid trustee suit continued in court several terms after this, and the plaintiff appeared as claimant of the said notes, and for two or three terms at court urged his claim to them; but at the February term, 1860, the defendant was adjudged chargeable for the four notes, and a receiver appointed to receive and collect the same; that about August 19th, 1859, the plaintiff had an interview with the defendant, who then admitted that he understood he was to give up the notes, but as it was not done at the same time as the mortgage note, the four notes were made a separate affair, and he might be held for them as trustee.

The plaintiff claimed that in July, 1860, the four notes not having been delivered to him, he rescinded the contract and demanded the repayment of the $300 and interest, and offered to return the note and mortgage, and to prove it, he testified that, on or about July 20th, 1860, he called upon the defendant and requested him to pay back the $300 and interest, and cost, and told him he was ready to surrender the mortgage and note, and that the defendant said he should not do any such thing.

Upon cross-examination, he said he was positive he told the defendant he was ready to deliver up the note and mortgage; that he told him he had them with him, but did not take them out; that he said he would deliver them to him on the payment of the money, interest and expenses; that he went to him under the advice of counsel, to do this; that he did not tell him what the expenses were, and did not then know himself, though he meant the same expenses which are described in his specification, being expenses incurred in urging his claim in court to the notes in question, as above stated, for counsel, witness fees, and his own time and expenses.

After an adjournment, by way of explanation, the

plaintiff testified that he told the defendant that he had come to see him in relation to the transaction, and to give up the papers, and thereupon the defendant asked him what he wanted, and the plaintiff replied, to give up the note and mortgage, and have him pay back the money and interest, and expenses, and the defendant said he should do no such thing.

Moore testified that he was present on this occasion, but could not tell the precise conversation; but that the plaintiff said in substance, that he had come to see the defendant about the matter, and wished him to take the note and mortgage; that the defendant then put a question that the witness could not state, but in reply to it the plaintiff said he wanted him to take the note and mortgage, and pay him the money, interest, and what expenses he had been at; to which Robie replied that he would not do any such thing. He testified that he did not hear all the conversation, and that when he gave a deposition some time before, he did not remember all he had stated now.

Upon this testimony the defendant's counsel contended that the plaintiff could not recover, upon the ground that no attempt to rescind the contract and recall the money was made in reasonable time, and also that there was no competent evidence of a rescinding of the contract, or of a valid demand of the money.

The court, however, being inclined to submit the question to the jury, it was at length agreed that a verdict should be returned for the plaintiff for the $300 and interest, subject to the opinion of the court. And the questions arising upon the case were reserved for the determination of the whole court.

*Minot & Mugridge* (with whom were *Stevens & Vaughan*), for the defendant, cited *Webb* v. *Stone*, 24 N. H. 288; *Cook* v. *Gilman*, 34 N. H. 556; *Masson* v. *Bovet*, 1 Denio 74;

*Kingsley* v. *Nallis,* 2 Shep. 57 ; *Concord Bank* v. *Gregg,* 14 N. H. 331 ; *Brinley* v. *Tibbets,* 7 Greenl. 70 ; *Pailey* v. *Balch,* 23 Pick. 283.

*George, Foster & Sanborn,* for the plaintiff, cited 2 Pars. on Cont. 191; *Goodrich* v. *Laflin,* 1 Pick. 57 ; *Hill* v. *Green,* 4 Pick. 114 ; *Fuller* v. *Little,* 7 N. H. 535 ; *Snow* v. *Prescott,* 12 N. H. 535 ; *Jenkins* v. *Thompson,* 20 N. H. 459 ; *Richards* v. *Allen,* 17 Me. 296 ; *Gillett* v. *Maynard,* 7 Johns. 85 ; *James* v. *Cotton,* 7 Bing. 266 ; *Concord Bank* v. *Gregg,* 14 N. H. 331; *Luey* v. *Bundy,* 9 N. H. 298 ; *Stevens* v. *Lyford,* 7 N. H. 360.

SARGENT, J. It is well settled that whenever one party to a contract refuses to execute any substantial part of his agreement, he thereby gives to the other party the option to rescind the entire contract, by offering to restore what he has received, and so replacing the parties in their original situation, provided the offer to do this is made in a reasonable time, and the situation of the parties remains so far unchanged that they can be restored to their former position.

But the party who would take this ground must do so distinctly and unequivocally. He can not treat the contract as binding and as rescinded at the same time. Where a party who may be entitled to repudiate a contract, either because it has not been performed in reasonable time, or because the other party refuses to execute any essential or substantial part of his agreement, does any act which amounts to an admission of the existence of the contract, or a ratification of it, after a full knowledge of all the facts and circumstances connected with it, he can not afterward elect to treat it as void and rescind it. *Pierce* v. *Duncan,* 22 N. H. 18 ; *Webb* v. *Stone,* 24 N. H. 288, and cases cited ; *Brinley* v. *Tibbets,* 7 Greenl. 70 ; *Allen* v. *Webb,* 24 N. H. 278 ; *Fuller* v. *Little,* 7 N. H. 535 ; *Jenkins* v.

*Thompson,* 20 N. H. 259; *Masson* v. *Bovet,* 1 Denio 74; *Kingsley* v. *Nallis,* 2 Shep. 57; *Cook* v. *Gilman,* 34 N. H. 556; *Brown* v. *Mahurin,* 39 N. H. 156; *Drew* v. *Claggett,* 39 N. H. 431.

It appears, in this case, that the defendant had been trusteed before the bargain was made between him and the plaintiff for the transfer of the notes, and that the plaintiff knew of this fact. It does not appear here, nor is it material, upon what particular ground the trustee was charged in the former suit. But it seems that, after the defendant had consulted counsel, and concluded not to give up these four notes to the plaintiff, as requested, the plaintiff elected to treat the contract as binding, and claimed to have it enforced, notwithstanding the pendency of the trustee suit, and actually appeared in court as claimant of those notes, and contested the title to them, persisting in claiming them under said contract for several terms, until the court decided that his claim could not be sustained, and held the defendant chargeable, as the trustee of said Moore, for the four notes then in question.

Had the plaintiff, as soon as he found that the defendant had decided not to give up these notes to him under the contract, elected at once to rescind the contract, and had he then tendered the defendant the three hundred dollar note and mortgage, unconditionally, and demanded back his money which he had paid, and, if not returned to him, commenced his suit for it, he could, no doubt, have sustained it; and had these proceedings all appeared in the disclosure of 'he trustee, as they necessarily would have done, the court undoubtedly would have held that the contract was void, and that the defendant should be charged for all the five notes, and a receiver appointed to collect the same, and apply the proceeds, first to pay the defendant the amount due him, and the balance in payment of the claim against said Moore in that suit. Rev. Stat., ch. 208, sec. 16; *Fling* v. *Goodall,* 40 N. H. 208. In

that case, the defendant would have had the five notes to rely upon, out of which he must be paid, if the mortgage was not sufficient security for his debt, and if there was any thing more, Moore's creditors would have had the benefit of it.

This would have been the situation of affairs, had the plaintiff elected to rescind the contract, when the defendant refused to perform it on his part. That would seem to have been the proper time for him to make his election, and, we think, he must be held to have then made his election, and have chosen to ratify the contract and risk the consequences. His conduct, in appearing as claimant of the notes in court, and so long contesting his claim, and the length of time that elapsed before he said any thing about rescinding the contract, are only consistent with that hypothesis.

But suppose the plaintiff had made no election before the time when he claims to have rescinded his contract, could he then, after that lapse of time, have put all parties, or even the defendant, in his former position, by rescinding the contract and restoring what he had received? It is clear that he could not. We have seen the position the defendant would have been placed in had the contract been rescinded. But now, instead of holding the mortgage of the farm and the four other notes, to secure his $300, the four notes have been taken from his hands, in payment of Moore's debts, while this plaintiff was claiming a ratification of his contract. Now, if the contract is rescinded, he will have nothing but his mortgage as security; and if that is insufficient to secure his debt, then his other security is gone, and he suffers loss. So that, on two grounds, we think, the plaintiff can not now rescind this contract. First, he can not now, by rescinding it and restoring all he has received, place the defendant in his former position, or one as favorable to himself as he was in before; and, second, because, hav-

ing once and at the proper time, made his election to ratify the contract, he can not, at this late day, undo all he has done, and be allowed to rescind it.

This view of the case renders it unnecessary to consider whether there was any evidence competent to be submitted to the jury, tending to show that the plaintiff had done and said enough to amount to a rescision in any case. This verdict, being taken by consent, would be sustained, if there was any competent evidence on which it could have been found; while a verdict, ordered by the court, will be set aside, if there was any evidence upon which the jury might have found the other way. In order to rescind a contract, the party proposing to rescind must deliver up or tender the property he has received, without condition or reserve; and then, before he can recover, he must demand the money he has paid, or the articles he has delivered to the other party, before suit brought. It is possible that, from the different statements made by the plaintiff, in regard to what passed between him and the defendant, July 20, 1860, it might have been proper to have left it to the jury to say what was said, and what the parties intended and understood by it, and if so, the verdict on that point would be sustained. But, however that may have been, in the view we take of the case, the plaintiff, upon other grounds, can not maintain his suit, and there must be

*Judgment for the defendant.*