The Shullo Construction Co. Appellant, *v.* Miller et al., Appellees.

(No. 5591—Decided May 12, 1965.)

*Messrs. Brouse, McDowell, May, Bierce & Wortman,* for appellant.

*Mr Stephan Gabalac,* for appellees.

Brenneman, J. This case comes to this court on appeal from the Common Pleas Court of Summit County, on questions of law and fact.

The matter was heard in the trial court upon the petition of the plaintiff for specific performance of a contract for the purchase of real estate. The facts are as follows:

On June 5, 1963, the defendants, appellees herein, Joseph Miller and Marguerite Miller, husband and wife (hereinafter called the "sellers"), granted to one Charles L. Davis an option to purchase certain lands, part of which was inside and part of which was outside the corportate limits of the city of Akron. The terms of the option granted to Charles L. Davis the right to purchase the lands "at any time prior to midnight November 30, 1963," for a price of $37,000, payable $1,000 cash upon notification that the option was to be exercised, and $36,000 upon delivery of a guaranteed title and warranty deed. This option, after execution, was assigned by Charles

L. Davis to the plaintiff, appellant herein, The Shullo Construction Company (hereinafter referred to as the "purchaser").

On September 10, 1963, the prospective sellers and the prospective purchaser entered into a written sales agreement for the sale and purchase of the property in question on terms as follows: $1,000 cash upon execution of the agreement (which sum was paid by purchaser and received by the escrow agent of the parties); $9,000 cash when sellers executed the deed; and the balance of $27,000 by a first mortgage loan of $27,000 executed by the purchaser to the sellers, the mortgage payable in three annual installments of $9,000 each, and the balance bearing interest at the rate of six percent computed annually. The sale was to be closed on or before November 30, 1963.

The sales agreement further provided that The Herberich-Hall-Harter Company be appointed as escrow agent and depository for all documents and money necessary to complete the sale.

On October 3, 1963, the escrow agent requested the attorney for the sellers to prepare the deed, note and mortgage and forward same to it along with his letter of instructions.

On October 15, 1963, the sellers, through their attorney, forwarded the deed, note and mortgage in the amount of $27,000 to the escrow agent, with the following instruction: "When you have secured the sum of $10,000 cash, the signed note and mortgage and a copy of the resolution showing the right of the officers of Shullo Construction Company to sign, you may deliver the deed."

The purchaser did not deposit $9,000 cash with the escrow agent on October 15, 1963, and the record discloses that the sellers waived this default in payment and agreed that the purchaser would have until midnight, November 30, 1963, to close the deal and pay the defaulted $9,000.

In furtherance of their preparation for closing the transaction, the sellers proceeded to sell, or offer for sale, their farm machinery. In addition, the sellers again notified the purchaser during the month of November 1963, and sometime prior to November 29, 1963, that they wanted the deal closed. In response to such request, the purchaser informed the sellers that it did not have to close the deal before November 30, 1963.

It also appears from the record that sometime between October 15, 1963, and November 29, 1963, the purchaser placed, or caused to be placed, a "For Sale" sign on the property, and the sellers insisted that it be removed until the deal was closed, and it was removed.

At the time of the removal of the sign, the sellers again notified the purchaser that they wanted the deal closed and that if it was not closed by November 30, 1963, there would be no deal.

On November 29, 1963, the purchaser sought an extension of time for closing the transaction, and on November 30, 1963 (Saturday), as late as eight o'clock in the evening, upon the refusal of the sellers to extend the time for closing the deal, the purchaser tendered directly to the sellers (and not to the escrow agent in accordance with the terms of the sales agreement) an uncertified check for $9,000 which the seller refused.

On December 2, 1963, the purchaser obtained certification of such check for $9,000 and tendered it to the escrow agent, which tender the sellers refused. On the same date, the purchaser also tendered to the escrow agent a note and mortgage for $27,000, dated December 2, 1963. On December 3, 1963, the sellers advised the escrow agent by telephone that the deal was off and that the deed was not to be delivered. On December 9, 1963, the attorney for the sellers directed a letter to the escrow agent stating that he been instructed by his clients to have the deed and letter of instructions returned and that the entire deal was being cancelled.

The sales agreement entered into on September 10, 1963, was entirely silent as to whether time was of the essence of the contract. The only wording in the agreement that discloses the terms, insofar as time is concerned, is—"This sale to be closed on or before November 30, 1963."

The trial court found for defendants (sellers) on the equitable grounds that "equity will not lend its aid to a party in default upon its contract and will uphold a rescission of the contract based upon default in performance by a buyer who remains in default of payment after the expiration of a voluntary extension of time for performance."

Appellants urge the generally accepted rule with regard to the determination of "the materiality of delay in perfor-

mance" as contained in the American Law Institute Restatement of Contracts, Section 276:

"* * *

"(e) In a suit for specific performance of a contract for the sale or purchase of land, considerable delay in tendering performance does not preclude enforcement of the contract where the delay can be compensated for by interest on the purchase money or otherwise, unless

"(i) *The contract expressly states that preformance at or within a given time is essential * * *.*" (Emphasis ours.)

As we have previously stated, the sales agreement did not specifically state that time was of the essence. It stated only —"This sale to be closed on or before November 30, 1963."

91 Corpus Juris Secundum, Vendor and Purchaser, Section 104 (c), at page 1003, treats of a similar situation as follows:

"*Although time is not of the essence of a contract for the sale of realty as originally made it may be made so by the subsequent conduct of the parties, as by one party giving notice to the other that he will insist on a strict performance, or, if the time of performance has arrived or is past, that he will insist on performance by a certain date, provided the time allowed by the notice is reasonable, which is a question of fact depending on the circumstances of the particular case * * *.*" (Emphasis ours.)

This statement is given additional weight in the case of *Schaengold* v. *Dick,* 36 Ohio App. 78, paragraph three of the syllabus, which states:

"Time could be made of essence of realty sale contract by express agreement *or by circumstances* or by length of time which would make it inequitable to compel specific performance." (Emphasis ours.)

The conduct of the parties in the instant case, applied to this statement of the law, is worthy of note.

The purchaser defaulted on the payment of $9,000 on October 15, 1963. To this default the sellers acquiesced but gave notice to the purchaser that there could be no further delay and insisted that the closing date set forth in the sales agreement be adhered to. That this was understood and agreed to by the purchaser is evidenced by its own acts of seeking an extension of time on November 29th and on November 30th. Again, when

the purchaser placed the "For Sale" sign on the property, the sellers requested its removal until the sale was closed and again informed the purchaser of the closing date. The purchaser removed the sign and attempted to secure an extension of time.

It is the opinion of the court that the "subsequent" conduct of the sellers and the purchaser, in the light of events during the period the sales agreement was in force, was such as to make time of the essence, and we so find.

The evidence disclosed the attempt of the purchaser to perform under the sales agreement by tendering an uncertified check in the amount of $9,000 directly to the sellers on the evening of November 30, 1963. The sales agreement called for $9,000 cash, payable to the escrow agent. Such acts were not in accordance with the sales agreement.

For the reasons heretofore expressed, we direct that judgment be entered for the defendants, Joseph Miller and Marguerite Miller.

*Judgment for defendants.*

DOYLE, P. J., and HUNSICKER, J., concur.