Grafton
No. 79-018

HUGH P. H. BOWER, JR., M.D.
AND
DONALD C. GLASSIE, JR.

v.

DAVIS & SYMONDS LUMBER COMPANY

August 17, 1979

*Clauson, Struckhoff & Kelly,* of Hanover (*K. William Clauson* orally), for the plaintiffs.

*Buckley & Zopf,* of Claremont (*Robert B. Buckley, Jr.,* orally), for the defendant.

BOIS, J.    This reserved case requires us to determine whether the Master (*Walter L. Murphy,* Esq.) erred when he found that the defendant is entitled to keep the plaintiffs' ten thousand dollar deposit as liquidated damages for the plaintiffs' failure to purchase under a purchase and sale agreement. We hold that the record supports the master's finding and we overrule the plaintiffs' exception.

On December 20, 1973, the parties entered into a written purchase and sale agreement. The plaintiffs contracted to purchase a large tract of land in Hanover from the defendant for a total purchase price of one hundred thousand dollars. The plaintiffs paid ten thousand dollars into an escrow account held by the defendant. The purpose of the escrow deposit was to assure performance by the plaintiffs. The contract provided that the deposit would either be credited toward the purchase price at closing or be retained by the defendant as liquidated damages if the plaintiffs defaulted. The contract provided that the

transaction would close on February 1, 1974, with a thirty-day extension possible if necessary to correct any defects in title. In a January 31, 1974, letter, the plaintiffs' attorney requested an extension agreement to enable the defendant to cure a serious defect in the record title. In a February 4, 1974, letter, the defendant's lawyer confirmed "an indefinite extension of time for performance." In an August 20, 1974, memorandum, the plaintiffs' lawyer reminded the defendant of its continuing contractual burden, and of the plaintiffs' intent to enforce the December 20, 1973, agreement as modified.

All findings of fact contained in the master's report are supported by the record. The report was approved by the Trial Court (*Johnson*, J.), who reserved and transferred all questions of law raised therein. The master found that until late December 1974, the parties continued to engage in a course of conduct indicative of a contractual relationship. The defendant assiduously sought to clear its record title. The plaintiffs encouraged this effort, and demonstrated their willingness to purchase as soon as marketable title was available. They never formally or informally repudiated the agreement. They never demanded return of their deposit money despite the defendant's failure to perform within the time limits specified in the written agreement.

In late December 1974, two months after the defendant had cleared all title defects and was capable of performing its obligation under the agreement, the plaintiffs repudiated the contract, claiming that all contractual obligations had terminated earlier that year. The master found, and plaintiff Bower's testimony confirms, that "the passage of time had dampened their enthusiasm for the investment." When the defendant did not return the ten thousand dollar deposit, the plaintiffs sued to recover it.

## I. *Enforceability of the Agreement*

Because the determination of the existence of a contract in the present case "depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence," it is the function of the master as the trier of fact to make that determination. RESTATEMENT (SECOND) OF CONTRACTS § 238(2) (Tent. Draft No. 1–7 1973); *accord, Erin Food Services, Inc. v. 688 Properties,* 119 N.H. 232, 235, 401 A.2d 201, 203 (1979); *O'Donnell v. Cray,* 109 N.H. 223, 225, 248 A.2d 83, 84 (1968). In such an instance, we will reverse a master's finding that a contract exists only "when it cannot 'reasonably be made on the evidence,' or when it 'can be said to be erroneous.'" *Humiston v. Bushnell,* 118 N.H. 759, 762, 394 A.2d 844, 846 (1978) (citations omitted).

The plaintiffs claim that the original agreement had expired because of the passage of time and the dates expressly imposed by the contract. They argue that even if it is found that they had agreed to an extension or that they had entered into a second agreement, such extension or additional agreement would be unenforceable under the Statute of Frauds. RSA ch. 506.

█ The master found that the Statute of Frauds is inapplicable in this case because the defendant relied and acted on the plaintiffs' written and oral statements and their course of conduct, which indicated that the plaintiffs considered the purchase and sale agreement to be of continuing effect. The record is replete with evidence to support this finding. The finding is supported by the correspondence between the parties' lawyers extending indefinitely the time of performance. The testimony of plaintiff Bower indicates that he was aware of his lawyer's role in securing a contract extension. It may be inferred that Bower had full knowledge of his lawyer's acts and intended to adopt them. *See deRochement v. Holden*, 99 N.H. 80, 83, 105 A.2d 43, 46 (1954). We therefore reject the plaintiffs' contention that they are not bound by acts of their lawyer. *Cf. Manchester Housing Authority v. Zyla*, 118 N.H. 268, 385 A.2d 225 (1978) (action within scope of lawyer's authority during civil litigation binding on client).

On January 31, 1974, the plaintiffs' lawyer wrote, "My clients have requested that I obtain from you a letter confirming that the parties are now operating under an extension of time. . . ." The defendant's lawyer responded in a letter dated February 4, stating, "This letter will confirm that we have agreed to an indefinite extension of time for the performance under the purchase and sale agreement dated December 20, 1973, . . . ." The exchange of letters indicates that the parties intended to continue their contractual relationship, and intended the provisions of the written agreement to remain operative.

██ A party to a purchase and sale agreement who consents to a postponement of the time for performance and induces the other party to act upon the consent cannot claim default and argue that the contract has lapsed. This is true even when time has been made of the essence in the original written agreement. *Warren v. Dodge*, 83 N.H. 47, 51, 138 A. 297, 299–300 (1927), *citing Neppach v. Oregon & California Railroad Co.*, 46 Or. 374, 397, 80 P. 482, 487 (1905). If we were to allow the plaintiffs to prevail in this case, we would sanction their practice of treating "the contract as binding and as rescinded at the same time." *Weeks v. Robie*, 42 N.H. 316, 320 (1861); *Sumner & Company v. Parker*, 36 N.H. 449, 454 (1858). This we will not do.

We further reject the plaintiffs' implicit argument that their performance under the purchase and sale agreement should be excused under either the doctrine of impossibility of performance or commercial frustration. The impossibility doctrine requires that there be complete and permanent impossibility. *Perry v. Champlain Oil Co.*, 99 N.H. 451, 453, 114 A.2d 885, 887 (1955). Under the commercial frustration doctrine, frustration is relative, and usually not deemed present when the contract's main purpose is obtainable. *Id.* at 553–54, 114 A.2d at 888. In the present case, the conveyance of marketable title was neither impossible nor unobtainable. At the time the plaintiffs repudiated the agreement, the defendant was able and willing to tender marketable title, and the plaintiffs were obligated to purchase it.

## II. *Liquidated Damages*

This court's appellate function is not independently to find facts in order to determine the appropriateness of an award of damages. "Our only function is to determine whether a reasonable man could have reached the same decision as the master on the basis of the evidence before him." *Sargent Lake Ass'n v. Dane*, 118 N.H. 720, 722, 393 A.2d 559, 561 (1978).

Liquidated damages provisions are enforceable when, upon execution of a contract, potential actual damages are difficult to estimate, the parties intend to liquidate damages in advance, and the amount stipulated is both reasonable and proportionate to the anticipated damages. *Langlois v. Maloney*, 95 N.H. 408, 412–13, 64 A.2d 697, 701 (1949). The master's award of the liquidated damages to the defendant is reasonable. In real estate transactions, projected damages from a breach are difficult to forecast because land values fluctuate. The purchase and sale agreement specifically states that "SELLER shall retain said sum of Ten Thousand ($10,000.) Dollars as liquidated damages in lieu of any other remedy at law or in equity." Finally, the liquidated sum is reasonable and proportionate to the damages actually incurred by the defendant. The contract price in the present case was one hundred thousand dollars. After the plaintiffs' breach, the defendant sold the property to a third party for ninety thousand dollars in an arm's-length transaction.

## III. *Conclusion*

We sustain the master's finding that the purchase and sale agreement is enforceable and that the defendant is entitled to retain the ten thousand dollar deposit as liquidated damages. The master's

detailed report is amply supported by the hearing transcript and exhibits in the case.

*Exception overruled.*

All concurred.