Hillsborough
No. 84-513

ANDREW S. WELKIND & a.

v.

STEWART K. HALL & a.

December 4, 1985

*Joseph Williams*, of Manchester, by brief for the plaintiffs.

*Hamblett and Kerrigan P.A.*, of Nashua (*John P. Griffith* and *Timothy G. Kerrigan* on the brief, and *Mr. Kerrigan* orally), for the defendants.

PER CURIAM. This appeal involves the plaintiffs' efforts to recover a security deposit they made pursuant to their agreement to purchase the defendants' home. The defendants filed a counterclaim seeking not only to retain the security deposit but to recover consequential damages they claim to have suffered when the plaintiffs failed to purchase their home.

The Superior Court (*Wyman*, J.) approved the Master's (*William R. Drescher*, Esq.) report and ruling that the plaintiffs' refusal to purchase the property under a financing contingency clause, due to the lender's addition of conditions on its financial commitment, was a breach of the agreement; therefore, the defendants were entitled to retain the security deposit. As to the defendants' claim for consequential damages, the master concluded that they were not reasonably foreseeable at the time the agreement was made and, therefore, that the plaintiffs should not be held responsible for them. The plaintiffs appealed. For the reasons that follow, we affirm.

In August 1983, the plaintiffs, Andrew and Rebecca Welkind, entered into a purchase and sale agreement with the defendants, Stewart and Deane Hall, to purchase their home in Amherst at a price of $103,000. The agreement required a $5,000 escrow deposit and included a liquidated damages clause which provided that if the buyer defaulted, the seller could retain the deposit as reasonable damages. The agreement was also contingent upon the buyers' obtaining a financing commitment from a loan institution of $82,400 for thirty years at an interest rate not to exceed 12% for an initial 3-year period. The agreement also provided that if the buyers notified the sellers in writing of their failure to obtain financing before September 23, the agreement would become null and void and the deposit would be returned to the buyers.

The plaintiffs received a financing commitment on September 4, 1983, from the Colonial Mortgage Company in the amount of $82,400 for a thirty-year period at 11 1/2% interest rate (3-year variable), subject to the condition that they sell their Massachusetts home by the closing date. The plaintiffs rejected this condition, and the lender, on September 22, 1983, issued another commitment letter for financing on the same terms, but subject, however, to the alternative conditions that (1) they either sell or rent their house in Massachusetts or (2) Andrew Welkind verify a gross income of

$3,186 per month. On September 22, Welkind sent a letter to the sellers' agent, the Norwood Group, Inc., stating that because of the additional conditions placed upon the financing commitment, he would not accept that commitment. Although the lender also offered instead to provide a six-month bridge loan at 12 1/2% secured by a second mortgage on the plaintiffs' Massachusetts home, the plaintiffs rejected this arrangement as well. The sellers finally sold their house to a third party in April 1984, for $90,000.

The plaintiffs argue that the financing arrangement offered to them by Colonial Mortgage Company contained two conditions which did not conform to the terms of the financing clause in the purchase and sale agreement. The first condition required that the plaintiffs verify an income of $3,186 per month. They were unable to do so because Andrew Welkind's income was contingent upon an oral agreement with a third party for architectural services for $24,375. The third party, however, later refused to execute the contract because of a zoning problem, but continued to employ Welkind on an hourly basis.

The plaintiffs assert that if there is any breach of the agreement on their part, it is involuntary since they were not responsible for their changed financial condition and that, therefore, they are entitled to the return of their security deposit. *See Bruyere v. Jade Realty Corp.*, 117 N.H. 564, 566, 375 A.2d 600, 601 (1977). The master found, however, and Welkind testified that he never informed Colonial Mortgage Company of the modification of his source of income. Welkind also testified that his income would be the same whether he worked on an hourly basis or by contract and that he still planned to buy the house despite the modification of income.

The second condition, in the alternative, required the plaintiffs to either sell or rent their house in Massachusetts prior to the closing. The plaintiffs argue that whether or not they ultimately planned to sell their Massachusetts home, this requirement as part of the financing commitment was an additional term which they were not obliged to accept. The master heard testimony and specifically found that the plaintiffs entered into the purchase and sale agreement knowing that their failure to sell their house would not void the agreement.

There was also testimony that the plaintiffs had been told at the time of application for financing that the property would have to be sold. Welkind testified that he knew the seller would not agree to a contingency that if his house was not sold, the contract was void. He also admitted he knew he would have to sell his house or find alternative financing. The master also found that the sale or rental of the plaintiffs' house was only one alternative among several possible

alternatives, including interim financing at a slightly higher interest rate, all of which the plaintiffs rejected, and that, therefore, the plaintiffs' refusal to purchase the defendants' house because of the conditions which the bank attached to the financing clause was unreasonable. We agree with the master's findings.

■ Unless the terms of the loan offered by Colonial Mortgage Company were unreasonable in the mortgage market at the time of the agreement, the additional contract conditions of the "subject to financing" clause cannot be considered unreasonable. *Gaynes v. Allen*, 116 N.H. 469, 470–71, 362 A.2d 197, 198–99 (1976). There is no indication that, given Mr. Welkind's situation at the time he entered into the purchase and sale agreement, the various alternatives presented by the loan institution were unreasonable.

■■ As to the issue of damages, the master found that the amount of $5,000 represented liquidated damages which was a reasonable measure of damages in this case. We agree. Deposit money is often regarded as liquidated damages for the protection of a seller if there is a breach, 5 S. WILLISTON, CONTRACTS § 790 (3d ed. 1961), especially where the amount of liquidated damages is a fair estimate of the seller's actual damages resulting from the breach. Liquidated damages provisions are deemed enforceable in real estate transactions where "projected damages from a breach are difficult to forecast because land values fluctuate." *Bower v. Davis & Symonds Lumber Co.*, 119 N.H. 605, 609, 406 A.2d 119, 122 (1979). The liquidated sum can be considered reasonable if the amount reflects the actual damages incurred. *Id.* The sellers in this case agreed to sell their home to the plaintiffs for $103,000, which, after paying the seven percent real estate commission, would have given them a net price of $95,790. The sellers in fact later sold their home without a broker's commission for $90,000. The difference is $5,790. Thus the $5,000 retained as damages did in fact reasonably represent the damages suffered by the defendants.

The plaintiffs cite *Zareas v. Smith*, 119 N.H. 534, 404 A.2d 599 (1979) as standing for the proposition that the proper measure of the seller's damages when the purchaser refuses to perform is the difference between the contract price and the actual value of the property at the time of the breach. In *Zareas*, however, there was no liquidated damages provision in the purchase and sale agreement; and the plaintiff, in attempting to prove that the contract price for the sale of the real estate exceeded the actual value, used the amount of proceeds of the sale of a different quantity of land sold more than a year after the breach. *Id.* at 537, 404 A.2d at 601.

██ The seller may retain the deposit upon breach by the purchaser so long as the amount of the deposit does not unreasonably exceed the damages actually suffered by the seller. *Gaynes, supra* at 471, 362 A.2d at 199. We hold that the master's finding that the $5,000 deposit did not exceed the damages suffered was reasonable.

*Affirmed.*

JOHNSON, J., did not sit.