# C & M Realty Trust

v.

# Gordon Wiedenkeller

August 1, 1990

*Nixon, Hall* and *Hess P.A.*, of Manchester (*David W. Hess* and *Francis G. Murphy, Jr.*, on the brief, and *Mr. Murphy* orally), for the plaintiff.

*Richard G. Smith*, of Rindge, by brief and orally, for the defendant.

THAYER, J. This appeal arises out of an action by the plaintiff to recover $100,000 given to the defendant pursuant to a real estate

purchase and sale agreement. The plaintiff appeals an order of the Superior Court (*Hollman*, J.) finding that the plaintiff breached the parties' purchase and sale agreement and that the defendant properly retained its $100,000 deposit as liquidated damages. The plaintiff argues generally that it did not breach the agreement and that, if it did, the defendant was not entitled to retain the $100,000 as liquidated damages. We affirm.

The facts are as follows. On March 3, 1986, the parties executed a purchase and sale agreement in which the plaintiff agreed to buy the defendant's real property located in Jaffrey for $1,350,000. The contract included a clause that stated:

> "Deposit, receipt of which is hereby acknowledged in the form of CHECK is to be held in an escrow account by GORDON WIEDENKELLER in the sum of $25,000. Additional deposit will be paid on or before (NON REFUNDABLE) $ _____."

There was also a liquidated damages clause that provided:

> "LIQUIDATED DAMAGES: If the BUYER shall default in the performance of his obligations under this agreement, the amount of the deposit may, at the option of the SELLER, become the property of the SELLER as reasonable liquidated damages. . . ."

According to the agreement, the balance of the purchase price in the amount of $1,325,000 was to be paid at the time of the transfer of title on July 1, 1986.

The plaintiff was unable to obtain the necessary financing by July 1, and on July 7, the parties entered into a second agreement, to extend the closing date. There was conflicting testimony at trial concerning the date to which the parties agreed to extend the closing, but the trial court found that the plaintiff asked for an extension to July 18, and that the defendant agreed to close on July 30, 1986. The defendant requested the plaintiff to make an additional deposit on the property in consideration for extending the closing date, and the parties agreed that the plaintiff would forward a check to the defendant in the amount of $100,000. The parties disagree, however, whether the $100,000 was to serve as a refundable or nonrefundable deposit.

According to the plaintiff, Mr. Wiedenkeller was interested in something in Florida and needed funds, so the plaintiff made an additional $100,000 deposit on the property it wanted to purchase "just in order to assist Mr. Wiedenkeller because he was trying to put this situation [in Florida] together." There was no question as far as the

plaintiff was concerned that the $100,000 would be returned if its deal with the defendant fell through. The defendant, however, testified that he told the plaintiff on July 7 that he would not extend the contract past July 1 "unless a substantial deposit was made. . . ." Although he requested that ten percent be put down, the defendant explained that he agreed to a lesser deposit of $100,000 which was to be nonrefundable.

Despite the extension to July 30, the plaintiff was unable to close as planned, and the parties met on November 17 to negotiate further. At the meeting, the plaintiff and the defendant considered terms different from those embodied in the original March 3 purchase and sale agreement. Specifically, the parties discussed, *inter alia*, the plaintiff's paying $225,000 at the time of closing, and executing and delivering to the defendant a mortgage deed and promissory note in the amount of $1,000,000. On December 5, 1986, counsel for the plaintiff sent counsel for the defendant an offer based on the parties' negotiations on November 17, stating that the proposal could not be accepted after December 26. The defendant's counsel accepted the plaintiff's offer on December 26 by a letter in which he set forth the terms of the agreement and indicated that closing was to take place on or before December 31, 1986.

The plaintiff failed to close on or before December 31, and on January 9, 1987, the plaintiff's attorney notified the defendant's attorney that the plaintiff wanted five additional terms incorporated into their agreement. These terms were materially different from any the parties had previously discussed, and by letter dated January 27, 1987, the defendant informed the plaintiff that he considered the plaintiff to be in breach of their original contract dated March 3, 1986. Additionally, the letter indicated that Mr. Wiedenkeller intended to retain the deposit of $125,000 as liquidated damages as a result of the plaintiff's breach. The record indicates that the defendant sold his property to a third party in June, 1987, for $1,385,000, $35,000 more than the price at which he had contracted to sell it to the plaintiff.

The plaintiff subsequently brought suit to recover his deposit of $100,000, claiming that the defendant, and not the plaintiff, had breached the December 26 contract, and that, even if he did breach the contract, $125,000 was unreasonable as liquidated damages. Trial was held on April 14, 1989, and on April 19 the court issued an order stating in part:

> "Plaintiff's failure to close in accordance with the terms of the December, 1986, agreement and its apparent insistence on changing that agreement by including new material

terms constituted a breach of the December, 1986 contract, entitling defendant to declare that the $100,000 deposit was his property as reasonable liquidated damages for the breach."

While the plaintiff testified that it did not consider the $100,000 deposit nonrefundable, the trial court found that "the parties expressly agreed the additional $100,000 would be a nonrefundable deposit subject to defendant's retaining it as liquidated damages if plaintiff breached. . . ." The court considered the $100,000 to be an additional deposit on the defendant's property which fell within the purview of and was controlled by the liquidated damages provision included in the parties' original March 3, 1986 purchase and sale agreement. As far as damages are concerned, the trial court found that the plaintiff's failure to perform in accordance with the contract by July 30, 1986, deprived the defendant of the use of $1,225,000 for a substantial period of time, and that $125,000 constituted "appropriate reasonable liquidated damages."

On appeal, the plaintiff alleges that the trial court erred in ruling (1) that its attorney's January 9 letter constituted a breach of the parties' December, 1986 agreement; (2) that the $100,000 was a non-refundable deposit within the terms of the March 3 agreement; and (3) that the defendant was entitled to keep the $100,000 as liquidated damages.

The plaintiff argues that the trial court erred in finding that the January 9, 1987 letter sent by its counsel constituted a breach of the December, 1986 agreement. We need not resolve this argument, however, in light of our discussion and holding below that the trial court did not err in ruling that the plaintiff breached the December agreement when it failed to close in accordance with its terms. The trial court found that the December letters between the parties' counsel were in effect an offer and acceptance of the terms that the parties had discussed at the November 17 meeting, and that this new agreement was nothing more than an amendment of the prior agreement dated March 3, 1986. As noted above, the court ruled that "[p]laintiff's failure to close in accordance with the terms of the December, 1986, agreement and its apparent insistence on changing that agreement by including new material terms constituted a breach of the December, 1986 contract. . . ."

According to the record, the plaintiff's attorney sent a letter dated January 9, 1987, to the defendant's counsel, which began:

"This letter is to confirm our telephone conversation of January 7, 1987. The conditions we discussed relative to the above are as follows. . . ."

Next were listed five terms that the parties had not previously discussed, and that were materially different from those of the earlier agreements. Although the plaintiff's letter refers to a conversation on January 7, there is no evidence in the record to indicate whether a conversation took place, and if so, what was discussed. In response to the plaintiff's January 9 letter, counsel for the defendant wrote a letter dated January 26 in which he stated that the defendant would not accept the additional terms proposed by the plaintiff, and that his client considered the plaintiff to be in breach of the original contract. He explained that the plaintiff's failure to perform its obligations under the original contract together with its "insistence upon the inclusion of the additional terms contained in [the] letter of January 9, 1987 render the contract unacceptable."

■■ In finding that the plaintiff breached by failing to close in accordance with the terms of the December, 1986 agreement, the trial court apparently found that time was made of the essence in the December amendment. While the general rule is that time is not of the essence unless a contract specifically so states, we will consider the parties' intent in determining whether time has been made of the essence, including the words of the document, the conduct of the parties and the practical interpretation of the contract by the parties thereto. *Guy v. Hanley*, 111 N.H. 73, 75, 276 A.2d 1, 3 (1971); *see Johnson v. Korsak, Inc.*, 120 N.H. 412, 415–16, 415 A.2d 1141, 1143 (1980) (time held to be of essence in purchase and sale agreement even though not expressly made so by contract language). Even if time is not made of the essence in the original contract, it may be made of the essence by the parties' subsequent conduct. *See Shullo Construction Co. v. Miller*, 207 N.E.2d 393, 395–96 (Ohio App. 1965); *English Speaking Union (New York) v. Payson*, 174 N.Y.S.2d 775, 779 (1958).

■ The evidence discloses that in the plaintiff's December 5 letter to the defendant, the plaintiff wrote, "the closing date [c]ould be set either in the year 1986 or 1987 as an accommodation to your client." The defendant responded in his December 26 letter that closing would "take place on or before December 31, 1986." Additionally, the defendant explained in his letter that he was leaving the entire day of December 31 clear for the closing. Based on the December letters' express references to the date of closing, together with the practical interpretation by the parties that the closing take place no later than December 31, 1986, we conclude that the trial court could reasonably have found that time was made of the essence in the December agreement. Accordingly, we hold that because the plaintiff

failed to close by December 31, the trial court did not err in ruling that the plaintiff breached the December agreement. The plaintiff argues that the trial court erred in finding that its counsel's letter of January 9 constituted a breach. However, we need not reach this issue in light of our holding above that the plaintiff breached by failing to close by December 31, 1986.

We next consider whether the $100,000 was a nonrefundable deposit within the terms of the March 3 agreement. "[T]he proper interpretation of a contract is ultimately a question of law for this court, and we will determine the meaning of the contract based on the meaning that would be attached to it by reasonable persons." *Goodwin Railroad, Inc. v. State*, 128 N.H. 595, 602, 517 A.2d 823, 829 (1986). We will consider the intent of the parties at the time the agreement was entered into in arriving at its interpretation. *Id.* at 604, 517 A.2d at 830. The parties' intent will be determined based on objective standards, rather than on their subjective, unmanifested states of mind. *Kilroe v. Troast*, 117 N.H. 598, 601, 376 A.2d 131, 133 (1977). The parties do not dispute that when the March 3 agreement was executed, the $25,000 deposit was intended to serve as liquidated damages in the event that the plaintiff defaulted in the performance of its obligations. They disagree, however, whether or not the subsequent deposit of $100,000 was also intended to serve as liquidated damages.

The plaintiff argues that the $100,000 was not made subject to the "liquidated damages" provision of the March 3 agreement, and that it never manifested its assent that the $100,000 would be nonrefundable. While the record discloses that the plaintiff considered the $100,000 deposit refundable if it failed to close on the defendant's property, the record also indicates that on July 7, when the parties were discussing extending the closing date, the defendant said to the plaintiff, "I want [the $100,000] nonrefundable. I want the check made out to me, I don't want the money to go into escrow." The trial court was in the best position to observe the parties and to determine their credibility, and we will not overrule its findings unless they are unsupported by the evidence or erroneous as a matter of law. *See Ryan v. Perini Power Constructors, Inc.*, 126 N.H. 171, 173, 489 A.2d 137, 138 (1985); *In re Adoption of Baby C.*, 125 N.H. 216, 225, 480 A.2d 101, 106 (1984).

In finding that "if plaintiff failed to close by July 30, 1986, the $100,000 together with plaintiff's original $25,000 deposit would be nonrefundable as defendant's liquidated damages," the trial court determined that the March 3 purchase and sale agreement was mod-

ified in July when the parties agreed to extend the closing date and the plaintiff agreed to make an additional deposit of $100,000. As a result, the trial court concluded that instead of a $25,000 deposit, the contract was modified to include a $125,000 deposit which would be nonrefundable should the plaintiff fail to perform by July 30.

Whether or not a contract has been modified is a question of fact for the trial court to determine, and we will not disturb its ruling unless the record contains insufficient evidence to support it. *Guri (Cushing) v. Guri*, 122 N.H. 552, 555, 448 A.2d 370, 371 (1982). A review of the March 3 agreement indicates that the document provided for the possibility of additional deposits being made, which, like the $25,000, would be nonrefundable. Moreover, the liquidated damages provision did not differentiate between the original deposit and any additional deposits paid after the execution of the contract. A reasonable interpretation of this clause is that all deposits paid towards the purchase price would be forfeited in the event that the plaintiff failed to fulfill its obligations under the contract.

The record also reveals that there is a notation on the $100,000 check that the plaintiff sent to the defendant that reads: "Additional deposit on Jaffrey property." When the contract provisions relating to an "additional deposit" and to "liquidated damages" are viewed together with the notation on the $100,000 deposit paid by the plaintiff, it is reasonable to conclude that the parties intended to modify the March 3 contract to include a deposit of $125,000 that would be nonrefundable should the plaintiff fail to perform by July 30, 1986. *Cf. Welkind v. Hall*, 127 N.H. 440, 443, 503 A.2d 779, 781 (1985) (deposit money often treated as liquidated damages for protection of seller). Based on the evidence presented at trial and the findings of the trial court, we hold that the March 3 contract was modified in July to add $100,000 to the original nonrefundable deposit of $25,000.

The final issue we decide is whether or not the trial court erred in ruling that the defendant properly retained as liquidated damages the disputed $100,000. It is well settled in New Hampshire that before a liquidated damages clause will be enforced, three conditions must be met:

"(1) that the damages to be anticipated as resulting from the breach are uncertain in amount or difficult to prove; (2) that there was an intent on the part of the parties to liquidate them in advance; and (3) that the amount stipulated was a reasonable one, that is to say, not greatly disproportionate to the presumable loss or injury."

*Langlois v. Maloney*, 95 N.H. 408, 412–13, 64 A.2d 697, 701 (1949) (quoting *Schoolnick v. Gold*, 89 Conn. 110, 113, 93 A. 124, 125 (1915)). We have concluded that "[i]n real estate transactions, projected damages from a breach are difficult to forecast because land values fluctuate." *Bower v. Davis & Symonds Lumber Co.*, 119 N.H. 605, 609, 406 A.2d 119, 122 (1979); *see Realco Equities, Inc. v. John Hancock Mut. Life Ins. Co.*, 130 N.H. 345, 351, 540 A.2d 1220, 1224 (1988) (widely recognized that damages resulting from failed real estate deal difficult to prove). Thus, the first condition of the *Langlois* test is met.

The second prong is satisfied by looking to the terms of the March 3 agreement, which included a liquidated damages provision. This clause is clearly written, and there was evidence from which one could reasonably conclude that the parties intended it to serve its obvious purpose. Since, as we have found, the March 3 purchase and sale agreement was modified in July to reflect a total deposit of $125,000, so that the liquidated damages provision's reference to "deposit" included a reference to the additional $100,000, we conclude that the parties intended in advance to liquidate their damages in the amount of $125,000.

 The third condition to be met is that the amount of liquidated damages stipulated must be reasonable. The trial court found that the defendant's retention of the $125,000 deposit "constitute[d] appropriate reasonable liquidated damages." Our function on appeal is to determine whether a reasonable person could have arrived at the same determination as the trial court, based on the evidence, and we will not upset the trial court's finding as long as it is substantiated by the record and is not erroneous as a matter of law. *See Realco Equities, Inc.*, 130 N.H. at 348, 540 A.2d at 1222. The record discloses that in the defendant's January 26 letter to the plaintiff, in which he announced his intention to retain the $125,000 as liquidated damages pursuant to the plaintiff's breach, the defendant stated that he was deprived for a substantial period of time of the use of the $1,225,000 that was due on July 30. There was testimony that the defendant listed his property with several brokers throughout the period of the parties' negotiations, but he did not enter into any other purchase and sale agreements or show it to other people from March 3 until July 30. In September of 1986, the defendant received an offer to purchase for $1,500,000, but the transaction was never completed. The plaintiff maintains that the defendant did not suffer any damages in light of the defendant's eventual sale in June, 1987, to a third party for $35,000 more than the plaintiff had agreed to pay for the property.

The amount the defendant retained as liquidated damages was less than ten percent of the purchase price, and although we have not previously considered the reasonableness of such a percentage, other courts have recognized that liquidated damages in the amount of ten percent are enforceable. *See, e.g., Curtin v. Ogborn*, 75 Ill. App. 3d 549, 555, 394 N.E.2d 593, 598–99 (1979); *Stein v. Bruce*, 366 S.W.2d 732, 737 (Mo. Ct. App. 1963); *Kraft v. Michael*, 166 Pa. Super. 57, 62, 70 A.2d 424, 426–27 (1950). The evidence did not clearly establish that the defendant suffered no damages, *see Realco Equities, Inc.*, 130 N.H. at 351, 540 A.2d at 1224, and the trial court found that the defendant was deprived of the use of the balance of the purchase price that was due on July 30, 1986, which was $1,225,000. While the trial court ruled that the plaintiff breached the agreement in December, it also found that the defendant was deprived of the use of the balance of the purchase price from July 30 forward. Damages resulting from a breach of contract are generally calculated from the date of the breach, and not from a prior date. *See Rankin v. Hojka*, 42 Ill. App. 3d 440, 447, 355 N.E.2d 768, 774 (1976); *Lake Region Paradise Island, Inc. v. Graviss*, 335 So.2d 341, 342 (Fla. App. 1976); *Maw v. Fay*, 248 Mass. 426, 432, 143 N.E. 315, 316 (1924); *cf. Zareas v. Smith*, 119 N.H. 534, 537, 404 A.2d 599, 600 (1979) (proper measure of damages is difference between contract price and actual value of real estate at time of breach). We hold, however, that based on the percentage of the purchase price represented by the deposit, as well as the loss of use the defendant suffered from not having the balance of the purchase price from the date of breach, the trial court did not err in ruling that the amount of liquidated damages retained by the defendant was reasonable. Having determined that the *Langlois* three-part test has been met in this case, we hold that the trial court did not err in ruling that the defendant properly retained the entire deposit of $125,000 as liquidated damages.

For the foregoing reasons, we hold that the trial court did not commit error in ruling that the plaintiff breached the parties' purchase and sale agreement and that the defendant was entitled to retain the disputed $100,000 as liquidated damages.

*Affirmed.*

HORTON, J., did not sit; the others concurred.