# ROCKINGHAM,

## DECEMBER TERM, A. D. 1842.

## BREWSTER *vs.* EDGERLY.

The question, whether a sum stipulated to be paid upon the non-performance of a contract, or the happening of a contingency, be a penalty or liquidated damages, is to be determined upon a construction of the whole contract, and the intention of the parties, as manifested therein.

The defendant promised, by an instrument under seal, that if a certain receipt, for which he acknowledged the plaintiff had paid him a consideration, did not contain "a true and proper method for making approved incorruptible teeth," he would pay the plaintiff one hundred dollars.—*Held*, that this sum was to be considered as liquidated damages, and not a penalty.

The act of June 23d, 1822, does not authorize the reference of a case to an auditor, where no investigation of accounts, nor examination of vouchers, is necessary.

It does not authorize such a reference where the questions of fact relate only to the execution and breach of the instrument on which the action is brought, and where no accounts nor vouchers are to be examined.

An auditor's report, made in a case where the statute does not authorize a reference to an auditor, is not competent for the consideration of the jury; and if it be submitted to the jury as evidence, the verdict will be set aside.

DEBT, upon a sealed contract, containing a receipt for making incorruptible teeth, the latter part of which was in the following words: " I hereby acknowledge that for these directions the said Brewster has paid in hand to me the value of twenty dollars this day. Now if this paper does not contain a true and proper method for making approved incorruptible teeth, I will, to said Brewster, on demand, pay one hundred dollars truly and faithfully. The above is a true and accurate form of proportion of parts for making the porcelain teeth, and is the proper and entire manner for finishing."

(Signed)  C. W. Edgerly.

The contract was recited in the declaration, and it was

therein averred that the receipt did not give a true and proper method for making approved incorruptible teeth, whereby the defendant had forfeited, &c., to the plaintiff the sum of one hundred dollars, &c.

Plea, the general issue.

At the February term, 1840, of the common pleas, the case was committed to an auditor, at the hearing before whom the counsel for the defendant objected that there was nothing in the case proper to be submitted to an auditor; but the objection was overruled, and the auditor reported that the sum of $64.26 was due to the plaintiff. At the same term, the report was recommitted, and at the February term, 1842, of the common pleas, the auditor made a second report, and found due the plaintiff the sum of $59.60. The case was tried by the jury, and the report was submitted to them as evidence, and a verdict was returned for $59.60. The counsel for the defendant moved that the verdict be set aside, because the subject matter of the action was not proper to be submitted to an auditor, and the report was therefore incompetent evidence. The question arising upon this motion was transferred to this court for determination.

*Emery*, for the plaintiff. It has often been ruled in the common pleas, that after an auditor has been appointed, and a report made, it is too late to object that the case was not proper to be submitted to an auditor, and that the report could not be set aside for this cause. The reason given is, that as the record is made up that an auditor was appointed, it will be presumed that proper reasons were shown to the court for the appointment, or that the parties agreed that an auditor should be appointed.

*Hale*, (with whom was *James Bell*) for the defendant.

GILCHRIST, J. We do not perceive, from an examination of the contract upon which the suit is brought, nor has it

been suggested, that there is any other matter substantially in controversy between these parties, than the sum which the plaintiff is entitled to recover. Various exceptions, besides those stated in the case, were taken to the proceedings of the auditor, but we have found it unnecessary to examine them, as the exception now before us is sufficient for the proper disposition of the case.

The first point for inquiry is, the construction of the contract. Did the defendant mean what in the contract he has plainly and pointedly said, or did he mean something else? He has said that if the paper "does not contain a true and proper method for making approved incorruptible teeth, he will, to said Brewster, on demand, pay one hundred dollars, truly and faithfully." Did he mean that, in the contingency provided for, he would "pay one hundred dollars truly and faithfully," or did he mean only that he would pay such damages as Brewster should sustain, if the contingency should happen? It is obvious that the question is, whether the sum mentioned be a penalty, or liquidated damages.

If we were to attempt to reconcile all the contradictory decisions upon this question, we apprehend that we should find the difficulty said to exist by the court in *Chamberlain* vs. *Bagley*, 11 *N. H. R.* 234, an insurmountable one. Many of the decisions of the judicial tribunals, heretofore, have been based upon what is now admitted to be an insecure foundation; for the judgments have often proceeded, not upon the plainly expressed intention of the parties, in a case free from fraud or illegality, but upon the view which the court entertained of what would have been, on the whole, just, considering such circumstances as were proved to exist. The dangerous uncertainty of such a mode is manifest, when the impossibility of placing any other person in the exact condition of the parties at the time the contract was made, is considered. Many motives influence them, many considerations weigh with them, which no other person could understand and appreciate, unless he could thoroughly identify

himself with the parties; and when the contract, reasonably construed, has a plain meaning, that one party shall in a certain contingency pay the other party a definite sum, the relieving him from that liability, and making the contract mean something which on its face is not apparent, by assuming that we can place ourselves in the position of the parties and can then know precisely what would have been equitable for them to do, is nothing else than a rescission of their contract, and a substitution for it of one made by the court. This result the cautious policy of the common law has never recognized as within its powers, nor have the courts ever in terms claimed the right to produce it; still, it has sometimes been effected by the anxious desire of the tribunals that the law should not be made an instrument of injustice; forgetting, sometimes, perhaps, in this laudable zeal, that one of the greatest evils in the administration of justice, and one which brings numberless others in its train, is that feeling of social insecurity which will exist, whenever the inviolability of legal contracts is trenched upon, however pure might have been the motive for so doing.

The case of *Kemble* vs. *Farren*, 6 *Bing.* 141, where the opinion of the court was pronounced by that very able judge, Lord Chief Justice Tindal, is one of those where the court seem to have attempted to place themselves in the position of the parties, and to have given what they considered an equitable effect to the contract, disregarding its express language. The defendant engaged himself to act as principal comedian at Covent Garden Theatre, for four seasons, and in all things to conform to the regulations of the theatre. The plaintiff agreed to pay him 3*l.* 6*s.* 8*d.* every night on which the theatre should be open during the four seasons. There was a clause in the agreement, that if either of the parties should refuse to fulfil the agreement, or any part thereof, or any stipulation therein contained, he should pay to the other the sum of £1000; to which it was agreed that the damages should amount, and which was declared by the parties to be

*liquidated and ascertained damages, and not a penalty or penal sum,* or in the nature thereof. The breach alleged was that the defendant refused to act during the second season, and the verdict was for the plaintiff, with £750 damages, subject to a motion for increasing them to £1000, should the plaintiff be entitled to that sum by the contract. The court held that the sum was a penalty, and not liquidated damages, on the ground that the sum was to be paid upon the breach of any stipulation by either party. "If, therefore," says the learned judge, "the plaintiff had neglected to make a single payment of 3*l.* 6*s.* 8*d.* per day; or, on the other hand, the defendant had refused to conform to any usual regulation of the theatre, however unimportant, it must have been contended that the clause in question in either case would have given the stipulated damages of £1000. But that a very large sum should become immediately payable, in consequence of the non-payment of a very small sum, and that the former should not be considered a penalty, appears to be a contradiction in terms; the case being precisely that in which courts of equity have always relieved, and against which courts of law have in modern times endeavored to relieve, by directing juries to assess the real damages sustained by the breach of the agreement." Reference is made in the opinion to the case of *Astley* vs. *Weldon,* 2 *Bos. & P.* 346, as decided upon the same grounds with the principal case.

It may be very true, that where a large sum is to become payable, in consequence of the non-payment of a small sum, and where this is all the contract, equity would relieve the party, by whatever name the large sum should be designated in the contract; and it may be very proper that such relief should be granted. And if we could assume that in *Kemble* vs. *Farren* a breach of any of the stipulations would have been followed by no inconveniences to those for whose benefit they were intended, excepting such as directly resulted therefrom, perhaps we might then say that the payment of a large

sum for the breach of some minute regulation, would be too inequitable to be permitted. But those regulations were parts of a system of rules adopted for the better disposition of the business of the theatre. And we may well suppose that a system, in whose successful operation many persons and many interests were concerned, to be useful must not only be minute in its details, but must be rigidly enforced. The infraction of one rule with impunity would cause others to be disregarded, and would soon introduce that confusion which it was the object of the system to avoid. Considered, then, in this light, as a part of a whole, and deriving its value partly from its relation to others, the violation of a rule seemingly, at first sight, unimportant, becomes a thing to be guarded against. The parties evidently regarded each rule, not as an isolated and merely arbitrary matter, but as something which, for the convenience of all, should be enforced in the manner provided for by the contract. But where a party agrees to pay a sum of money, and agrees also to do certain other specific things, the damages resulting from a non-performance of which will be uncertain, and if he should fail to perform his contract, promises to pay a larger sum, even if it be called a penalty, why should it be held a penalty in every case that could arise under the contract? If the parties clearly intended, upon the whole contract, to ascertain and settle the damages upon a breach of the specific clauses, why should the sum be held to be a penalty, as to those clauses, merely because the contract contained a provision for the payment of a sum smaller than the penalty? Why is it not just as proper to say, in construing the contract, that the sum is liquidated damages as to all the clauses, as it is to declare that it is a penalty as to all the clauses? But it is very evident that arriving at such a result, upon such grounds, is anything but finding out the meaning of the parties. It is simply the application of an inflexible, Procrustean rule, to whose measure all cases coming within it must be lengthened or shortened, disregarding every other consideration. This

rule may be thus stated : If a party agree to pay a sum of money, and agree also to do certain specified things, the damages resulting from a non-performance of which are uncertain, and promise to pay a larger sum of money, as liquidated damages and not as a penalty, if he should fail to fulfil any part of his agreement, although it appear that the parties actually intended that the sum should be paid as liquidated damages upon any breach of the contract, still, even in an action for the breach of one of the specific clauses sounding in uncertain damages, the sum must be regarded as a penalty ; because in the contract there is also a stipulation for the payment of a sum of money smaller than the liquidated damages, even if that sum be payable by the plaintiff and not by the defendant.   We believe that this is substantially the doctrine of *Kemble* vs. *Farren*, and there are other cases in the books which it is unnecessary now to comment upon, and which are to the same effect.   There are cases, however, which take the opposite view of the duties of the court, and hold that the lawful intention of the parties is to be regarded. One of these is *Reilly* vs. *Jones*, 1 *Bingh.* 302 ; 8 *Moore* 244, *S. C.*, where a large sum was reserved as " liquidated damages" on the non-performance of *any part* of a public house agreement, containing minute stipulations ; and another is *Barton* vs. *Glover*, *Holt's N. P. R.* 43 ; and these illustrate our remark that the decisions upon this subject are irreconcilable.   With all deference and respect to the learned and able judges by whom the case of *Kemble* vs. *Farren*, and others like it, were decided, we cannot accede to the correctness of those decisions, both because they seem to us inequitable to the parties, where an agreement is free from fraud and illegality, and because we think that the substitution of an agreement, made by the court for the parties, in the place of their own plain intention, tends to render private contracts dangerously uncertain in their effects.

The enquiry then is, what is the meaning of the contract ? The defendant's language is, that if the receipt do not con-

tain a true and proper method for making approved incorruptible teeth, he will pay the plaintiff one hundred dollars. The omission of any particular requisite, or an error in stating the proper proportion of any ingredient, may vitiate the whole; for it is upon the right combination of the ingredients in certain proportions that the efficacy of the receipt depends. The plaintiff purchased and paid for the defendant's secret. However many and minute may be the directions in the receipt, if one of them prove erroneous, or if the whole do not produce the desired result, it will not be the "true and approved method," which the defendant has alleged it to be; and we see no reason why he should not pay the stipulated sum.

An examination of this question has been necessary, that we might determine whether the case were properly referred to an auditor. Had it appeared that the defendant knew of the reference to the auditor at the term, and omitted to except thereto, probably such omission might be a waiver of the objection. But upon this point we are not informed, and the plaintiff has not contended that the exception, if it existed, has been waived by the conduct of the defendant, in omitting to except when he knew of the reference. The exception appears to have been taken upon the first hearing before the auditor.

The act of June 23, 1822, N. H. Laws 377, (Ed. of 1830) provides that "whenever it shall appear that an investigation of accounts, or an examination of vouchers is necessary, for the purposes of justice between the parties," an auditor may be appointed, &c. In this case no account is to be investigated, and no voucher is to be examined. That the plaintiff should recover, he had only to prove the execution and the breach of the contract. The consideration of evidence on these points is particularly within the province of the jury; and if this case be a proper one for an enquiry by an auditor, it will be difficult to say that every case should not be thus referred. But the object of the statute was not

to anticipate the verdict of a jury upon mere questions of fact, not embraced within the terms used.   Where there are vouchers for the payment of money, whose authenticity is to be examined ; where there are numerous items of account, upon each of which an issue of fact may arise ; a preliminary examination and report by a competent auditor, shortens and facilitates the trial, and lessens the expenses of the parties. It was to include such cases that the statute was intended, and not to submit to an auditor questions which the jury can easily and intelligently try.   The opinion of the court is, that the statute does not authorize the reference of such a case as this to an auditor, and, consequently, that the report was incompetent to be submitted to the jury as evidence. The verdict must, therefore, be set aside, and the defendant is entitled to a

*New trial.*