Sullivan,
Mar. 1, 1949. } No. 3812.

MAYNARD G. LANGLOIS *v.* GORDON MALONEY & *a.*

*Buckley, Zopf & Hamlin (Mr. Buckley* orally), for the plaintiff.

*Leahy & Denault (Mr. Leahy* orally), for the defendants.

DUNCAN, J.  Pursuant to the terms of the contract, upon its execution the plaintiff made the down payment of twenty thousand dollars which he now seeks to recover, and received forty of the one hundred shares of stock which he undertook to buy.  The unpaid balance of twenty-five thousand dollars he agreed to pay in monthly installments of five hundred dollars each, with interest at five percent per annum.  The balance of the stock was to be delivered, ten shares when an additional ten thousand dollars had been paid, and the re-

maining fifty shares on final payment of the balance of purchase price. The crucial clauses of the contract provide in part as follows:

"9. In case of default in any of the monthly payments of principal and/or interest when due, and for thirty (30) days thereafter, this contract shall thereupon, at the option of the Sellers, be forfeited and determined and terminated and all payments of principal and interest which shall have been made hereon, shall be retained by the Sellers by way of liquidated damages for breach of contract on the part of the Purchaser to consummate said purchase, and the said Peoples National Bank shall return to the Sellers all certificates of stock together with their resignations as directors and officers of said corporation . . . .

"10. The Purchaser further agrees, in case of default in paragraph 9 above, to transfer and deliver up to the Sellers the certificate or certificates of capital common stock for forty (40) shares which was delivered to him by the Sellers upon the execution of this agreement; and he shall also transfer and deliver up to the Sellers certificate or certificates of capital common stock which may have been transferred to him under paragraph 7 of this agreement."

Pursuant to other provisions of the contract, the plaintiff took possession of the business on November 1, 1946. He continued in possession until December 1947. He was made a director of the corporation, the defendants Maloney continuing as the other two directors. Nine installments were paid by the plaintiff pursuant to the terms of the contract. The tenth having been in default for more than thirty days, on or about October 14, 1947 the defendants made an examination of the books of the company, and on or before December 26, 1947 the plaintiff surrendered the forty shares of stock which he held. An annual meeting of the corporation occurred on December 26, 1947. Following it a new contract was executed, by which it was agreed that the prior contract was terminated for material breach by the plaintiff, and that the plaintiff would buy and the defendants would sell the one hundred shares of stock for $25,000, to be paid on January 2, 1948. The plaintiff failed to perform the second contract and on January 3, 1948, through his attorneys demanded repayment by the defendants of the twenty thousand dollar deposit made by him on October 31, 1946.

The Trial Court ruled that "the reference to principal in Clause Nine refers to the monthly payments on the unpaid balance and does not include the twenty thousand dollars" and that "it may be implied from the language used in the contract itself, that the plaintiff shall not lose the twenty thousand dollars, and that, therefore, the defen-

dant should return it to him since he has surrendered the forty shares of stock." Accordingly a verdict was returned for the plaintiff.

The rulings of the Trial Court appear to have been made out of deference to the principle that forfeitures "are not favored in the law," and in consequence of the conclusion that "if a construction could be adopted which would prevent a forfeiture of the twenty thousand dollars, then such a construction should be adopted." They turn upon a holding that the provisions of the ninth clause of the contract are ambiguous, and should be construed to permit the sellers to retain only the monthly payments made by the plaintiff.

The net effect of the Trial Court's action, limited as it was by the agreement of the parties, was to find the plaintiff entitled to the return of his twenty thousand dollar deposit, less whatever actual damage the defendants may be able to establish. This appears to us to be the necessary effect of the ruling that "in case it is finally determined that the plaintiff is entitled to a return of all or any part of the twenty thousand dollars . . . then it is found that the defendants have not had a fair opportunity to present . . . a defense and they should be given an opportunity to do so." In this view, the plaintiff's motion for judgment was properly denied. If the defendants are not entitled to retain the deposit as liquidated damages, it is obvious that judgment should not be entered against them until their damages have been adjudicated.

No exceptions to the findings and rulings of the Court are presented by the reserved case. The defendants' exceptions to the denial of their motions for nonsuits and directed verdicts present the issue of the sufficiency of the evidence to support the action of the Court. Their general exception to the verdict adds nothing to the exceptions previously taken. See *Eastman* v. *Waisman*, 94 N. H. 253, and cases cited.

While we do not find ourselves wholly in accord with the Trial Court's construction of the contract of October 31, 1946, we are nevertheless of the opinion that the Court was warranted in holding the plaintiff's deposit to be in the nature of a penalty, or security for performance of the contract, rather than a forfeiture representing a genuine and reasonable pre-estimate of damages for breach of the contract.

In *Hurd* v. *Dunsmore*, 63 N. H. 171, 172, the law as laid down by our decisions was thus stated: "Whether the sum mentioned . . . is to be treated as a penalty or as liquidated damages, is a question to be decided upon a consideration of the whole instrument. It is a ques-

tion of intent, to be ascertained from the language of the instrument, the nature of the agreement, and from the circumstances of the parties, and not by technical rules of law. . . ."

The language of the instrument in this case motivates against the conclusion reached by the Trial Court. In abbreviated form, it was this: "In case of default in any of the monthly payments of principal and/or interest . . . this contract shall . . . be forfeited and . . . terminated and all payments of principal and interest . . . made hereon shall be retained by the Sellers by way of liquidated damages . . . " Literal compliance with this provision would permit the defendants to retain the plaintiff's deposit. The phrase "all payments of principal . . . made hereon," refers to payments made on "this contract"; and the words "all payments" are in distinct contrast to the words "any of the monthly payments" used just previously.

It is well settled, however, that the language of the parties is not conclusive of their intent. Cf. *Durand* v. *Cohen*, 86 N. H. 575; *Davis* v. *Gillett*, 52 N. H. 126, 129; 2 Pomeroy, Eq. Jur. (5th *ed.*) s. 440a. Because determination of a question like that before us is so frequently held not to depend solely upon a construction of the language used by the parties, the rule of intention has been forcefully criticised as misleading. "The matter would be much simplified if it were clearly recognized and stated that the reasonableness of the agreed sum looked at as of the time when the contract was made is the only important thing." 3 Williston, Contracts (Rev. *ed.*) s. 778. See also, 2 Pomeroy, Eq. Jur. (5th *ed.*), s. 440b, 440c. "In a branch of the law filled with contradictory decisions, there is at least uniformity in acknowledgement that there can be no liquidated damages unless the sum stipulated bears some reasonable relation to the probable actual damages." Development in the Law—Damages, 61 Harv. L. Rev. 113, 130.

Another consideration frequently advanced as an aid in determining whether the stipulated sum is in fact liquidated damages, or merely a penalty, is that of whether the anticipated damages will be difficult to determine and to prove. "A contract to pay a stipulated sum as damages will not be given effect unless the damages provided against are uncertain and not ascertainable by any satisfactory and certain rule of law." 2 Pomeroy, Eq. Jur. *supra*, s. 440.

In *Schoolnick* v. *Gold*, 89 Conn. 110, 113, the rule was stated thus: "A provision in a contract for the payment of a stipulated sum will be regarded and enforced in the event of its breach, as one for liquidated damages, when three conditions coexist, to wit: (1) that the damages

to be anticipated as resulting from the breach are uncertain in amount or difficult to prove; (2) that there was an intent on the part of the parties to liquidate them in advance; and (3) that the amount stipulated was a reasonable one, that is to say, not greatly disproportionate to the presumable loss or injury." See also, *Priebe & Sons* v. *United States*, 332 U. S. 407, 411, 412.

As summarized by the Restatement, the rule is not essentially different: "An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect damages recoverable for the breach unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm . . . is one that is incapable or very difficult of accurate estimation." Restatement, Contracts, s. 339.

The principles so stated have been applied with varying emphasis in our decisions. *Durand* v. *Cohen, supra; Davis* v. *Gillett, supra; Morrill* v. *Weeks*, 70 N. H. 178; *Brewster* v. *Edgerly*, 13 N. H. 275; *Clark* v. *Britton*, 76 N. H. 64; *State* v. *Corron*, 73 N. H. 434; *Houghton* v. *Pattee*, 58 N. H. 326; *Mead* v. *Wheeler*, 13 N. H. 351; *Chamberlain* v. *Bagley*, 11 N. H. 234. Applied to the facts of this case, with due consideration of the "nature of the agreement and . . . the circumstances of the parties" (*Hurd* v. *Dunsmore, supra.*), the controlling principles support the view taken by the court below. The contract is one for the sale of stock, a contract generally considered not to be within the Sales Act. R. L., c. 200, s. 76; Williston, Sales (Rev. *ed.*) s. 619a. However, the remedies available to a seller upon breach by the buyer are well defined apart from the act. *Id.*, s. 555. By providing that upon default by the plaintiff all stock should be returned to them, the defendants in effect reserved to themselves the remedy of rescission. "Looked at as of the time when the contract was made" (Williston, Contracts, *supra*), if upon default the buyer should comply with the requirement that he return the stock, the seller's damages could be little more than nominal, assuming efficient management of the business by the buyer during the period of his control. In such an event, the monthly payments forfeited by the buyer would compensate the sellers for their deprivation of use and income, and liquidated damages of twenty thousand dollars would be wholly unreasonable.

There is no evidence to warrant the conclusion that the parties regarded a loss to the sellers of twenty thousand dollars as the reasonably probable consequence of a breach. So long as no default occurred, the unpaid balance of purchase price would be consistently

reduced, and the probability of default correspondingly lessened. Yet a literal enforcement of the contract would require forfeiture of the buyer's deposit, even though all but five hundred dollars of the purchase price had been paid before default. The improbability that the parties regarded the stipulated sum as the amount probably to be required to compensate the sellers for loss on breach is obvious.

The defendants' damages in the event of breach by the plaintiff would be measured by the difference between the contract price of the stock, and its market value. *Rand* v. *White Mountains Railroad,* 40 N. H. 79; 5 Williston, Contracts, *s.* 1378. In theory, this rule of damages might be considered unsatisfactory because of the difficulty of determining the market value of stock unlisted and closely held. The difficulty, however, is here more theoretical than real. The value of the stock necessarily depends upon the value of the equity of the business, the title to which it represents. To the extent that the net value of the business has diminished during the period of the plaintiff's management, the value of the stock may be found to have decreased accordingly. Thus while certain evidence of damages offered by the defendants was excluded because of the agreement limiting the issue before the Court, evidence was received which tended to show that during the year of the plaintiff's operation before default, new liabilities were incurred which ran to a very substantial total, and a large shrinkage in inventory occurred. While the defendants rely upon difficulties in ascertaining and proving damages from loss of patronage and good will, such damages may be thought to be fairly reflected by any demonstrable falling off of income chargeable to the plaintiff's management. On the whole, the damages do not appear to us to be so far incapable of accurate estimation as to compel a holding that the plaintiff's deposit must be considered to be liquidated damages.

Since there was no evidence that the sum deposited was considered by the parties to be a reasonable pre-estimate of probable loss on breach, and the prospective damage was not such as to be clearly incapable of determination by any satisfactory and certain rule of law, no occasion is presented to disturb the verdict of the court below.

There remains to be considered the effect of the contract between the parties which was executed under date of December 26, 1947. By this contract.it was agreed that the plaintiff's default was a material breach of the prior contract and that the contract was "declared terminated." It was further agreed that the plaintiff would buy and the defendants would sell the one hundred shares of stock for twenty-

five thousand dollars on January 2, 1948. The agreement for termination was no more than confirmation of what the original contract itself provided, namely, that upon default by the plaintiff, it should be "terminated." Agreement that it was terminated served to establish that the defendants were relieved of their obligation to hold the stock subject to the first agreement, and that the plaintiff's right to purchase by payments extending over a period of years was extinguished. No attempt was made by the parties to fix their respective rights and liabilities by reason of the breach, and no release of rights or claims was embodied in the instrument.

On the contrary, the obligation to purchase and sell was reestablished upon modified terms: the payment of twenty-five thousand dollars within seven days. There can be little doubt that in fixing the price at this figure, the parties treated the original deposit as a payment on account of the purchase price, rather than a sum forfeited by the plaintiff and no longer taken into account. Certainly none of the parties considered that it would be credited against the newly established price. Had the new contract been performed by the plaintiff, any liability under the former contract might well have been held extinguished, and the plaintiff precluded from claiming return of the deposit. But any such satisfaction of rights turned upon performance of the second contract, and was conditioned upon execution of the modified terms. Since the new contract was not performed by the plaintiff, the rights of the defendants remain unchanged. "Where the new contract is consistent with continuance of the former one and only provides a new mode of discharging such former one, it has no effect unless or until it is performed." 12 Am. Jur. 1013. Whether the second contract be deemed invalid for want of consideration (12 Am. Jur. 991, s. 413; 1 Williston, Contracts, *supra, ss.* 130, 130 A) or whether it be regarded as an accord without satisfaction (*Kann* v. *Company*, 85 N. H. 41, 52; *Gowing* v. *Thomas*, 67 N. H. 399; *Kidder* v. *Kidder*, 53 N. H. 561; 6 Williston, Contracts, *supra, ss.* 1841, 1847), its non-performance leaves the parties with their former rights and liabilities unaffected.

Accordingly, the verdict for the plaintiff will be permitted to stand, subject to reduction before judgment by any amount which the defendants may establish as damages resulting from the plaintiff's breach. The order is

*Exceptions overruled.*

All concurred.