Hillsborough
No. 90-503

SHALLOW BROOK ASSOCIATES

v.

RONALD DUBE AND PAULINE DUBE

November 8, 1991

*Cullity, Kelley and McDowell,* of Manchester (*John G. Cronin* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Theodore Wadleigh* on the brief and orally), for the defendants.

THAYER, J. This is an appeal from the Superior Court's (*Goode,* J.) denial of the plaintiff's amended "Motion to Cite for Contempt and Sanctions," which motion argued that the defendants violated the court's earlier order to specifically perform a real estate pur-

chase and sale contract. The plaintiff-buyer, Shallow Brook Associates, maintains that the court erred in ruling that it breached the contract when it failed to tender payment before a closing date set by the defendant-sellers, Ronald and Pauline Dube. The plaintiff also challenges the court's enforcement of the contract's liquidated damages clause to include a deposit made after the contract's formation. We affirm.

On December 18, 1984, the defendants agreed to sell a 45-acre parcel of land in Merrimack and Bedford to the plaintiff's predecessor in interest for $690,000. A $75,000 deposit was paid, and December 31, 1985, was set as the closing date. The buyer failed to perform at the appointed date, but paid an additional $75,000 deposit as consideration for extending the time for closing. Although further attempts to close were made on both sides, none succeeded. Finally, in 1989, the buyer filed a petition for specific performance and stated that it was ready, willing, and able to complete the sale. The Superior Court (*Goode*, J.) granted the petition, finding that time had not been "of the essence," and notified the parties of its decision on December 18, 1989. The court set no date for performance of the five-year-old contract. No appeal was taken from that court order.

In late January 1990, one of the plaintiff's principals, Michael Callahan, telephoned his loan officer and requested a loan of $150,000, the amount needed for closing the parties' contract. Callahan testified that he assumed the official would simply transfer the money to his account, as he had done several times before. Times had changed in the banking industry, however, and the official replied that Callahan would first have to obtain an appraisal of the property and an environmental survey, and then present his request to a bank committee. Callahan made no attempt to obtain either the appraisal or the survey, and abandoned his quest for bank financing.

The first communication between the parties following the court's order of specific performance occurred on February 7, 1990, when the defendants' counsel, Theodore Wadleigh, telephoned the plaintiff's counsel, William Kelley, to schedule a closing. Kelley declined to suggest a date, and in response Wadleigh wrote on February 14, 1990, that he had scheduled a closing for March 1, 1990. Kelley replied two days later that "Mr. Callahan is hopeful that he will be in a position to close on this transaction on or about April 1, 1990. He is not in a position to close on March 1, 1990 . . . ." When Wadleigh received this letter, he wrote back: "It still remains Mr. Dube's position that you close on or before March 1, 1990, or the contract will be terminated and the deposit forfeited."

March 1, 1990, saw no closing on the parties' contract, and a week later the plaintiff was still unable to predict when it would have the necessary funds to close. Wadleigh wrote to Kelley on March 9, maintaining that the defendants considered the contract terminated, but offering to return the $150,000 deposit if the plaintiff executed a release of the agreement by March 16. The plaintiff did not accept this offer, and instead notified the defendants on March 14 that it had finally obtained the needed funds and could close on March 16. The defendants, however, refused to close.

The plaintiff then filed a "Motion to Cite for Contempt and Sanctions," claiming that the defendants were in violation of the court's order of specific performance. The motion asked the court to hold the defendants in contempt, levy sanctions against them, and make "appropriate enforcement orders." The defendants objected to the motion, and a September hearing was scheduled. Just before the hearing, the plaintiff filed a motion to amend its previous motion. It alleged that, due to the defendants' refusal to close, the plaintiff had lost its financing commitment and was unable to secure alternative funding. The motion ended with a prayer to vacate the court's order of specific performance, re-open the case for a determination of damages, and order the defendants to refund the $150,000 deposit.

The court denied the plaintiff's requests for relief, ruling that "[t]he plaintiff having conceded his financial inability to proceed on March 1, or at any reasonably certain time in the foreseeable future, such an admitted inability constituted a material breach justifying defendants' termination of the agreement." In reaching this conclusion, the court found that "the selection of March 1, 1990 finalizing a transaction that commenced in December of 1984 and by any reasonable standard should have concluded, as originally scheduled, in December of 1985 was fair, just and appropriate under the circumstances." It is noteworthy that the court found incredible the plaintiff's assertion that it "was ready, willing and able to perform [its] obligations under the agreement from March 16, 1990, through September 1, 1990."

Turning to the issue of liquidated damages, the court ruled enforceable the contract's provision allowing forfeiture of "all deposits" upon the buyer's breach, because:

"(1) the damages resulting from plaintiff's breach are uncertain and difficult to prove; (2) there was an intent, by virtue of its inclusion in the agreement, on the part of the parties to liquidate such damages in advance; and (3) the

amount agreed upon (i.e. 'all deposits') was reasonable and not disproportionate to the presumable loss or injury. See *Langlois v. Maloney*, 95 N.H. 408, 412–413."

"[A]ll deposits," the court concluded, meant both $75,000 deposits.

On appeal, the plaintiff argues first that defendants' position is tantamount to a collateral attack on the court's original order for specific performance. We disagree, and hold instead that the plaintiff forfeited its right to specific performance by failing to tender payment within a reasonable time after the court's order.

■ "Where the decree is that the purchaser shall receive a deed when he makes a tender of the price, but no time is fixed for such tender, a reasonable time is intended . . . ." 81A C.J.S. *Specific Performance* § 217, at 205 (1977); *see also Lancaster v. Simmons*, 621 S.W.2d 935, 943–44 (Mo. Ct. App. 1981) (when specific performance is ordered, successful party must timely tender performance; reasonable time is implied when court gives no deadline). "Where the party in whose favor the decree is rendered fails to perform a condition thereof on which the rights decreed depend, he is not entitled to enforce such rights against the opposite party and the latter is entitled to be relieved of the decree . . . ." 81A C.J.S. *Specific Performance* § 217, at 204 (1977); *see also Delray Beach Whitehouse Apts., Inc. v. Hoffman*, 257 So. 2d 550, 556 (Fla. 1972); *Lancaster v. Simmons, supra* at 944; *Rosenstein v. Burr*, 83 N.J. Eq. 491, 492–93, 90 A. 1037, 1038 (1914); *Clark v. Hall*, 7 Paige Ch. 382, 385 (N.Y. Ch. 1839); *Bennett v. Copeland*, 149 Tex. 474, 480, 235 S.W.2d 605, 608 (1951).

■ We agree with the trial court that March 1, 1990, was a reasonable deadline for performance of the plaintiff's part of the contract. The plaintiff's award of specific performance was based on its declaration that it was ready, willing, and able to tender payment. *See Lancaster Development Corporation v. Kattar*, 110 N.H. 163, 167, 262 A.2d 278, 280–81 (1970) (decree of specific performance properly entered where plaintiff was ready, willing, and able to perform its part of the agreement). Moreover, the purchase and sale contract was not made contingent on the plaintiff's securing financing. Thus, lack of funds was no excuse for non-performance. *See Lancaster v. Simmons, supra* at 943 (court found especially egregious that buyer, who won order of specific performance, appeared unable to tender payment). Once the trial court entered an order in the plaintiff's favor, the plaintiff should have been able to

tender payment within a short period of time. *Cf. C & M Realty Trust v. Wiedenkeller*, 133 N.H. 470, 475–76, 578 A.2d 354, 357 (1990) (court upheld trial court's ruling that buyer breached purchase and sale contract when buyer failed to perform by date unilaterally set by seller; buyer given five days' notice of closing date). We consequently hold that the plaintiff forfeited its right to specific performance.

■■ We also uphold the trial court's ruling that the plaintiff's failure to meet the March 1, 1990 deadline constituted a breach of the purchase and sale agreement. The plaintiff argues that because the trial court once found that time was not of the essence, the plaintiff could not have breached the contract simply by missing a closing date. Although it is "the general rule . . . that time is not of the essence unless a contract specifically so states, . . . [e]ven if time is not made of the essence in the original contract, it may be made of the essence by the parties' subsequent conduct." *Wiedenkeller*, 133 N.H. at 475, 578 A.2d at 357.

In *Wiedenkeller*, the buyer wrote on December 5, 1986, that the closing date could be "either in the year 1986 or 1987." *Id.* The seller responded on December 26 that closing would "'take place on or before December 31, 1986.'" *Id.* We stated:

"Based on the December letters' express references to the date of closing, together with the practical interpretation by the parties that the closing take place no later than December 31, 1986, we conclude that the trial court could reasonably have found that time was made of the essence in the December agreement."

*Id.* The defendants here similarly set a firm closing date after receiving no more than vague assurances from the plaintiff. Moreover, the defendants in this case made it abundantly clear that they considered March 1, 1990, to be the plaintiff's last chance to perform on the contract. There being no meaningful distinction between our case and *Wiedenkeller*, we affirm the trial court's ruling that the plaintiff breached the purchase and sale contract.

■ We next turn to the subject of liquidated damages. The parties' purchase and sale contract contains a paragraph which states that "[i]f for any reason other than the Sellers['] inability to give a good and marketable title to sell said premises, the Purchaser fails to carry out this agreement all deposits shall be forfeited and retained by the Sellers as liquidated damages." The parties agree that, to enforce a liquidated damages provision, the seller must show:

"'(1) that the damages to be anticipated as resulting from the breach are uncertain in amount or difficult to prove; (2) that there was an intent on the part of the parties to liquidate them in advance; and (3) that the amount stipulated was a reasonable one, that is to say, not greatly disproportionate to the presumable loss or injury.'"

*Langlois v. Maloney*, 95 N.H. 408, 412–13, 64 A.2d 697, 701 (1949) (quoting *Schoolnick v. Gold*, 89 Conn. 110, 113, 93 A. 124, 125 (1915)). The plaintiff concedes that the first prong of the test is met here, and therefore we address only the last two requirements.

The second prong allows an award of liquidated damages only if the parties intended in advance to liquidate damages. *See Langlois*, 95 N.H. at 413, 64 A.2d at 701. Although the contract evinces such an intent by its plain language, the parties disagree over the amount of damages it requires. The plaintiff maintains that $75,000 was intended, because only one $75,000 deposit was contemplated at the time of contracting. The defendants, on the other hand, argue that the plain language of the contract, "all deposits," should be interpreted to include the additional $75,000 deposit made in consideration of extending the closing date.

■ Once again we turn to *Wiedenkeller* for a comparison of facts and an application of law. The contract at issue in that case contained a liquidated damages provision which referred to "the deposit." *Wiedenkeller*, 133 N.H. at 472, 578 A.2d at 355. The original deposit was $25,000 and a closing date was set for July 1, 1986. The buyer was unable to secure financing by that date, and paid the seller an additional $100,000 in consideration for extending the time limit. *Id.* When the buyer breached the contract, a dispute arose as to the amount of liquidated damages.

This court examined the record, and then upheld the trial court's finding that the parties modified their original contract to include the extra $100,000 as liquidated damages.

"A review of the [contract] indicates that the document provided for the possibility of additional deposits being made, which, like the $25,000, would be nonrefundable. Moreover, the liquidated damages provision did not differentiate between the original deposit and any additional deposits paid after the execution of the contract. A reasonable interpretation of this clause is that all deposits paid towards the purchase price would be forfeited in the event that the plaintiff failed to fulfill its obligations under the contract."

*Wiedenkeller*, 133 N.H. at 477, 578 A.2d at 358. The facts of this case closely parallel the facts recited above. Considering that here the liquidated damages clause reads "all deposits," a phrase much broader than "the deposit," found in the *Wiedenkeller* case, we hold that the second prong of the *Langlois* test is met.

■■ The third prong of the test requires that "'the amount stipulated was a reasonable one, that is to say, not greatly disproportionate to the presumable loss or injury.'" *Langlois v. Maloney*, 95 N.H. at 413, 64 A.2d at 701 (quoting *Schoolnick v. Gold*, 89 Conn. at 113, 93 A. at 125). The trial court found that the requirement was met, stating that "the amount agreed upon (*i.e.*, "all deposits") was reasonable and not disproportionate to the presumable loss or injury." We recently articulated the appropriate review standard as follows:

> "Our function on appeal is to determine whether a reasonable person could have arrived at the same determination as the trial court, based on the evidence, and we will not upset the trial court's finding as long as it is substantiated by the record and is not erroneous as a matter of law."

*Wiedenkeller*, 133 N.H. at 478, 578 A.2d at 359. Thus, it is not enough that we might have ruled differently had we been asked to decide this question in the first instance. Rather, we must affirm the trial court's finding unless it is unsupported by the evidence.

The plaintiff first argues that "[t]he trial court's order makes no determination as to the reasonableness of the amount to be retained by the Defendant[s]," and that therefore the case should be remanded for a proper finding. However, the court plainly stated that the agreed-upon amount "was reasonable and not disproportionate to the presumable loss or injury." The case cited by the plaintiff in support of its proposition, *Randall v. Riel*, 123 N.H. 757, 760, 465 A.2d 505, 507 (1983), involved a trial court which, unlike the court below, made no statement as to reasonableness, and wrote only that it knew "'of no law . . . which would affect the valid value of the contract and the strict enforcement of its terms.'" *Id.* The trial court here plainly made a statement as to reasonableness, and the plaintiff's argument therefore has no merit.

The plaintiff also argues that the amount of $150,000 is unreasonable and greatly disproportionate to the loss or injury suffered by the defendants. We note that although the third prong of the *Langlois* test implies that reasonableness and proportionality are determined in relation to the loss or injury presumed at the time of contracting, *see Langlois v. Maloney*, 95 N.H. at 413, 64 A.2d at 701,

cases decided by this court since *Langlois* have looked to a party's *actual* loss, as well as presumable loss, to resolve the question of reasonableness. *See, e.g., Realco Equities, Inc. v. John Hancock Mut. Life Ins. Co.*, 130 N.H. 345, 351, 540 A.2d 1220, 1224 (1988) ("the evidence did not clearly demonstrate that John Hancock suffered no damage as a result of the agreement's failure"); *Welkind v. Hall*, 127 N.H. 440, 443, 503 A.2d 779, 781 (1985) (liquidated sum can be considered reasonable if amount reflects actual damages incurred); *Bower v. Davis & Symonds Lumber Co.*, 119 N.H. 605, 609, 406 A.2d 119, 122 (1979) ("the liquidated sum is reasonable and proportionate to the damages actually incurred by the defendant").

The *Langlois* court quoted the Restatement (First) of Contracts § 339(1) (1932), which speaks only of "a reasonable forecast of just compensation," and declared that its rule "is not essentially different." *Langlois v. Maloney*, 95 N.H. at 413, 64 A.2d at 701. The comments to the Restatement, however, declare that actual damages can be a deciding factor in a case of liquidated damages:

> "If the parties honestly but mistakenly suppose that a breach will cause harm that will be incapable or very difficult of accurate estimation, when in fact the breach causes no harm at all or none that is incapable of accurate estimation without difficulty, their advance agreement fixing the amount to be paid as damages for the breach is . . . not enforceable."

RESTATEMENT (FIRST) OF CONTRACTS § 339, comment *e* (1932).

The drafters of the Restatement (Second) of Contracts § 356(1) (1979) incorporated this principle of actual damages into the body of the Restatement and stressed it in the comments and illustrations. Comment *b* states that "[i]f, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable." Similarly, illustrations 3 and 4 emphasize that, even if the liquidated sum is reasonable in light of the anticipated or presumable loss, the provision will not be enforced if the actual loss to the party is minimal *and* easy to prove.

These principles were lucidly articulated in *Colonial at Lynnfield, Inc. v. Sloan*, 870 F.2d 761, 765 (1st Cir. 1989). The court explained that, in determining whether to enforce a liquidated damages provision, one must first judge whether the provision "was a reasonable *estimate* of difficult-to-ascertain damage at the time the parties agreed to it." *Id.* (emphasis in the original). If it was a reasonable estimate, one must then conduct

"a retrospective appraisal of [the] liquidated damages provision . . . . If the actual damages turn out to be 'easily ascertainable,' a court must consider whether the stipulated sum is 'unreasonably and grossly disproportionate to the real damages from a breach' . . . . If so, the liquidated damages provision will be deemed unenforceable as a penalty, and 'the court will award the aggrieved party no more than his actual damages.'"

*Id.* (quoting *A–Z Servicenter v. Segal*, 334 Mass. 672, 675, 138 N.E.2d 266, 268 (1956)).

In a land sale contract, "[t]he proper measure of [actual] damages is the seller's 'loss of bargain,' the difference between the contract price and the actual value of the real estate at the time of the breach." *Zareas v. Smith*, 119 N.H. 534, 537, 404 A.2d 599, 600 (1979). The plaintiff apparently challenges this formula, noting that we calculated damages from the date of breach forward in *Wiedenkeller*, another case involving the breach of a purchase and sale contract. *Wiedenkeller*, 133 N.H. at 479, 578 A.2d at 359. In that case, however, the seller was able to sell his property before trial for more than the contract price. *Id.* at 478, 578 A.2d at 359. Thus, our statement of the actual damages in *Wiedenkeller* was not meant to limit damages for all sellers who fall victim to a buyer's breach. Rather, we merely noted that the actual damages available to that particular seller would be consequential damages calculated from the date of breach forward.

██ ██ Returning to the case before us, we apply the two-part test described above in *Colonial at Lynnfield, Inc. v. Sloan*. First, no evidence was presented to suggest that the liquidated damages provision in its contract was an unreasonable estimate of difficult-to-ascertain damage at the time the parties agreed to it. *Colonial at Lynnfield, Inc. v. Sloan*, 870 F.2d at 765. Second, the record fails to show that the amount of the defendants' actual damages was "'easily ascertainable'" and "'unreasonably and grossly disproportionate'" to the liquidated sum. *Id.* (quoting *A–Z Servicenter, Inc.*, 334 Mass. at 675, 138 N.E.2d at 268). Although the plaintiff claims in its brief that the defendants' property has "appreciated significantly," no evidence was presented below, and nothing has been presented to us on appeal, to support this bare assertion. On the contrary, the plaintiff conceded during oral argument that the value of the property has decreased, and spent much time at the hearing below complaining

about the deterioration of the real estate market. As the party alleging that the liquidated damages amount was unreasonable, the plaintiff has the burden of proof. *See, e.g., Clampitt v. A.M.R. Corp.*, 706 P.2d 34, 38 (Idaho 1985); *Pav-Saver Corp. v. Vasso Corp.*, 143 Ill. App. 3d 1013, 1019, 493 N.E.2d 423, 427 (1986); *Chamberlain Livestock Auction, Inc. v. Penner*, 462 N.W.2d 479, 484 (S.D. 1990); *Wassenaar v. Panos*, 111 Wis. 2d 518, 526, 331 N.W.2d 357, 361 (1983). Thus, we find no error in the trial court's conclusion of reasonableness.

 The plaintiff's last contention is that the amount of liquidated damages is unreasonable because it amounts to twenty-two percent of the total contract price, and that such a high percentage is by itself unreasonable. Although we have upheld enforcement of clauses permitting liquidated damages of ten percent or less of the total contract price, *see, e.g., Wiedenkeller*, 133 N.H. at 479, 578 A.2d at 359, we have also permitted sums equalling twenty-five, *see Mead v. Wheeler*, 13 N.H. 351, 352, 357 (1843), forty-two, *see Chamberlain v. Bagley*, 11 N.H. 234, 235, 241 (1840), and even five hundred percent, *see Brewster v. Edgerly*, 13 N.H. 275, 275, 282 (1842), of the total contract price, where circumstances warranted. We have never held that liquidated damages of more than ten percent are *per se* unallowable, and we decline to do so now.

*Affirmed.*

All concurred.