# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2024-0019, <u>Mahmoud Chatila v. Charles Smith, III & a.</u>, the court on March 14, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(3). The defendant[1], Charles Smith, III, appeals an order of the Superior Court (<u>Ruoff</u>, J.) granting the plaintiff's, Mahmoud Chatila, motion for summary judgment seeking specific performance of an option to purchase clause in a commercial lease. We affirm.

I.      <u>Factual Background</u>

The following facts are supported by the summary judgment record or were otherwise found by the trial court. On February 20, 2017, the parties entered into a commercial lease agreement (Agreement) by which the plaintiff leased the defendant's property in Derry (the Property). The Agreement provided for a term of four years ending on March 1, 2021 and a monthly rental payment of $3,750. Paragraph 18 of the Agreement contained a purchase option, which provided, in relevant part:

> The LESSEE may exercise the option to buy the property at any time during this term of the lease or immediately upon the termination of the lease. The agreed upon price of the option is $350,000 less the 50% taxes paid during the first year and any extra payments made during the four year term of the lease.

On November 10, 2020, plaintiff's counsel contacted then-counsel for the defendant by email informing her of the plaintiff's intention to exercise the option to purchase the Property. That same day, plaintiff's prospective lender contacted plaintiff's counsel and indicated that an executed purchase and sales agreement (P&S) would be required to obtain financing for the purchase. On November 16, counsel for the defendant contacted plaintiff's counsel indicating that the defendant had "no problem proceeding with [the purchase option]" and asking for a draft P&S. Plaintiff's counsel emailed a draft P&S to defendant's counsel on December 22. On January 14, February 3, and February 9, 2021, he contacted her inquiring about the status of the contract.

---

[1] Originally, the plaintiff named the defendant's former spouse, Maxine Smith, as a defendant. However, the parties agreed to dismiss her from the case after learning that she no longer maintained an interest in the Property following her divorce.

Throughout February and March, plaintiff's counsel emailed defendant's counsel repeatedly asking about the status of the P&S without a substantive response other than apologizing and indicating that she had not heard from the defendant.[2] In April, defendant's counsel provided a revised P&S to plaintiff's counsel who promptly responded with proposed revisions to the agreement. The defendant did not respond until June, when his counsel initially indicated that the defendant would sign the agreement. Five days later, defendant's counsel informed plaintiff's counsel that she had not received the defendant's approval of the revised P&S.

In July and August, plaintiff's counsel repeatedly contacted defendant's counsel seeking information regarding the status of the P&S and actions necessary to complete the transaction. In August, defendant's counsel emailed plaintiff's counsel that the plaintiff had informed the defendant that "he is no longer able to purchase the property due to a large payment to Harvard for his child;" and she asked that he "confirm with [the plaintiff] that the sale is off and let me know." The next day, plaintiff's counsel emailed defendant's counsel informing her that her information was inaccurate, that the plaintiff intended to "go forward with the sale," and asking for a response by the end of the week. The plaintiff received no further response from the defendant or his counsel until January 3, 2022, when a new attorney representing the defendant contacted plaintiff's counsel's firm regarding the sale of the Property.

From January to August, the parties engaged in further negotiations concerning the P&S and the defendant's removal of personal property, including a significant number of motor vehicles, from the Property prior to the closing on the purchase. Frequently, the defendant did not respond to the plaintiff's inquiries for weeks or months. On July 15, plaintiff's counsel informed defendant's new attorney that the plaintiff had sufficient funds to purchase the Property and wished "to proceed with a cash sale." Nevertheless, the defendant refused or failed to respond to the plaintiff's inquiries regarding the removal of the defendant's property, the precise terms of the P&S that would regulate any post-closing removal of the personal property, or a closing date. The record is devoid of information indicating that, during the November 2020 to September 2022 timeframe, the defendant asked for the immediate tender of the purchase price, or that he claimed either that the purchase option had expired or that the plaintiff was in default of the terms of the Agreement.

II.    Procedural Background

The plaintiff filed a complaint in the superior court on September 27, 2022 claiming a breach of contract and seeking specific performance of the sale of the Property and damages associated with having to continue paying rent to the defendant after attempting to exercise his right to purchase the Property.

_____
[2] As previously noted, the original lease term expired on March 1, 2021.

2

The complaint also alleged that the plaintiff had continued to pay the monthly rent pursuant to the Agreement after it expired in March 2021.

In April 2023, the plaintiff moved for summary judgment, arguing that there were no genuine issues of material fact as to whether the defendant breached the Agreement. More specifically, the plaintiff alleged that "[a]fter more than two years of intentional delay and willful breach of contract, it has become clear that [the defendant] has acted in bad faith" and that the defendant had "failed to offer any adequate denials or evidence to the contrary of [his] breaches." These circumstances, the plaintiff argued, supported his claim for specific performance, restitution damages associated with his continued payment of rent after he attempted to exercise the purchase option, and attorney's fees.

The defendant objected to the summary judgment motion, arguing that the plaintiff "failed to certify that he was ready, willing and able to purchase the property" under the terms of the Agreement, because the plaintiff required financing that was contingent upon "additional items, such as an appraisal, an environmental study and Plaintiff's financials." The defendant further argued that issues of material fact remained in dispute, such as the plaintiff's ability and willingness to purchase the Property without contingencies, whether the parties "came to a meeting of the minds concerning the terms and conditions of the purchase option," and whether the plaintiff "should be precluded from obtaining the equitable remedy of specific performance while [the plaintiff] was in breach of the lease."

After a hearing on the summary judgment motion, the trial court issued an order granting the plaintiff summary judgment, ordering specific performance, and awarding restitution. As to liability, the court found that "[t]he uncontroverted record overwhelmingly supports the conclusion that there was a valid lease and contract for the sale of the [P]roperty." With respect to the defendant's contention that material facts remained in dispute, the court found that "whether the plaintiff was 'ready, willing, and able' to purchase the [P]roperty" was not a "genuine issue of material fact" and whether the plaintiff defaulted on certain terms of the Agreement was immaterial because the "undisputed material fact remains that the lease was still valid, and the plaintiff's right to purchase the [P]roperty [was] never removed or rescinded, during his tenancy."

Based on these summary judgment findings, the court granted equitable relief by ordering the defendant to convey the Property to the plaintiff within 30 days at a purchase price of $344,150 ($350,000 purchase price less the 50% taxes paid during the first year of the lease and any extra payments made during the four-year term). As to the plaintiff's demand for restitution for the rent he paid during the pendency of the suit, the trial court found that the record supported that theory of recovery. The court reasoned that the

undisputed terms of the Agreement provided the plaintiff with the right to purchase the Property "at any time" during the lease term and he announced his intention to exercise that right five months prior to the expiration of the Agreement. The court found that the defendant delayed negotiations until the plaintiff initiated this action in September 2022, nineteen months after the lease term expired and, as a result, the defendant obtained $90,000 in rental income after the plaintiff attempted to exercise the purchase option. The court declined to award restitution for the fourteen months the case was pending and deducted three months of rent, concluding that three months was a reasonable time for the parties to meet the contingencies required to finance the purchase and schedule a closing. Finally, the court declined to award attorney's fees.[3]

The defendant filed a motion to reconsider, which the trial court denied. This appeal followed.

III.    Analysis

We review a trial court's grant of summary judgment de novo. Szewczyk v. Continental Paving, 176 N.H. 148, 163 (2023). When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. Id. If our review of the record does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. Id. An issue of fact is "material" for the purposes of summary judgment if it affects the outcome of the litigation under the applicable substantive law. Id. We have observed that trial courts must be wary of the application of summary judgment, but "[i]ts most effective use is in breach of written contract or debt cases." Id. (quotation omitted).

On appeal, the defendant maintains that the trial court erred in granting summary judgment and ordering equitable relief because: (1) the plaintiff failed to demonstrate that he was "ready, willing, and able" to pay the purchase price, and the plaintiff was in material breach of the Agreement when he exercised his purchase option and when the lease expired; (2) the plaintiff was not entitled to a specific performance remedy because he failed to complete the purchase immediately after the lease expired; (3) the record does not support the trial court's conclusion that the defendant had an incentive or intention to delay negotiation of the P&S in order to continue receiving rental income; and (4) the evidence did not support the trial court's conclusion that the Agreement and its purchase option constituted a valid contract for the sale of the Property, and the trial court imposed additional terms upon the defendant that were not included in the parties' Agreement. We disagree.

---

[3] We note that the plaintiff has not cross-appealed the trial court's decision.

4

We first address the defendant's claim that the plaintiff materially breached the Agreement, first, when he attempted to exercise the purchase option and, second, when the lease term expired. The Agreement includes a provision relating to "Default and Bankruptcy" at paragraph 15, which provides that the lessee is entitled to notice of any default with an opportunity to cure any circumstance leading to a default. Our review of the summary judgment record does not reveal any evidence that the plaintiff received any such notice prior to the filing of this action. Moreover, as the trial court observed, the plaintiff's purchase option was never formally rescinded during the tenancy based upon an alleged default. Accordingly, the defendant's default claims do not constitute a fact, much less a material fact, in dispute.

Nevertheless, the defendant maintains that the plaintiff failed to demonstrate that he was ready, willing, and able to pay the purchase price. However, the plaintiff, through his counsel, represented on multiple occasions that he was prepared to pay the purchase price. In fact, the plaintiff informed defendant's counsel that he was prepared to pay the purchase price in cash in July 2022. In response to these representations, the defendant repeatedly engaged in dilatory tactics by not responding to the plaintiff and his counsel for weeks or months at a time and by refusing to negotiate a P&S that would enable the plaintiff to obtain financing for the purchase. Under these circumstances, a party seeking to exercise a purchase option must simply represent that he is ready, willing, and able to purchase the property. See Lowell v. First Church of Christ, 101 N.H. 363, 366 (1958); see also Shallow Brook Assoc's v. Dube, 135 N.H. 40, 44 (1991) (rejecting challenge to a petition for specific performance based upon plaintiff's representation that it was ready, willing, and able to close on the sale).[4] On multiple occasions the plaintiff, through his counsel, made such representations. Therefore, the defendant's argument is factually and legally flawed.

With respect to the defendant's remaining arguments, our review of the record supports the trial court's finding that "[t]he uncontroverted record overwhelmingly supports the conclusion that there was a valid lease and contract for the sale of the property" and that "[t]he defendant delayed negotiations until the suit was filed . . . 19 months after the 4-year lease term would have expired." The communications between the parties from November 2020 to September 2022 overwhelmingly support this finding.

To the extent that the defendant argues that, having found a breach of the Agreement, the trial court erred by ordering specific performance, we

---

[4] In addition, to the extent the defendant maintains that the alleged August 2021 communication (approximately ten months after the plaintiff initially attempted to exercise the purchase option) regarding the plaintiff's inability to purchase the Property calls into dispute whether he was ready, willing and able to purchase the Property, the record supports the trial court's conclusion that this "fact" is not material to the dispute, nor does it create a genuine issue of material fact given that plaintiff's counsel immediately refuted this claim the very next day.

disagree. The propriety of affording equitable relief rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case. See Livingston v. 18 Mile Point Drive, 158 N.H. 619, 626 (2009). We will uphold a trial court's equitable order unless its decision constitutes an unsustainable exercise of discretion. Id.

We cannot conclude that the trial court unsustainably exercised its discretion by ordering specific performance and restitution. The trial court's equitable decree provided the parties with precisely what they bargained for had the purchase option been consummated in a reasonably timely manner after the plaintiff expressed his intention to do so. Accordingly, we affirm the trial court's summary judgment order, its grant of specific performance to the plaintiff, and its award of restitution.

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**