Strafford
Nos. 97-760
    98-226

## JOSEPH J. FIUMARA, TRUSTEE
## SHIRETOWN REALTY TRUST

v.

## HELEN ROBINSON & a.

July 26, 1999

*Joseph J. Fiumara, pro se,* on the brief, and *Robert G. Wines,* of Fremont, orally, for the plaintiff.

*Ronald B. Willoughby,* of Dover, by brief and orally, for the defendant, Helen Robinson.

*John F. Dolan, Jr.,* of Barrington, by brief, and *Mitchell & Bates, P.A.,* of Laconia (*Timothy Bates* orally), for the defendant, Town of Barrington.

JOHNSON, J. In this consolidated appeal, the plaintiff, Joseph Fiumara, trustee of the Shiretown Realty Trust, appeals a decision of the Superior Court (*Mohl,* J.) quieting title in the defendant, Helen Robinson, to a parcel located in the Town of Barrington (town) that the plaintiff bought at a tax sale. Defendant Robinson appeals a subsequent decision ordering her to pay the plaintiff $6,539.85 in back property taxes. The town cross-appeals, claiming, *inter alia,* that the trial court erred in quieting title in Robinson

based on her alleged disclaimer of title to the parcel and her failure to inspect the tax maps to locate and identify her properties. We affirm in part, vacate in part, and remand.

In 1959, two properties in the town passed from Robinson's grandfather to her father, then later to her mother, and finally to Robinson in 1980. One property, identified by the town as Tax Map 13, lot 21 (lot 21), which contains a house and garage, is not at issue in this case. The second parcel, Tax Map 13, lot 22D (lot 22D), consists of approximately twenty acres of wooded area and is related to this appeal. Robinson and her predecessors in interest paid property taxes on lots 21 and 22D through the 1981 tax year. Tax bills included in the record through that tax year identified the approximate acreage of lot 22D as "20.0."

In 1982, the town completed a property revaluation and created new tax maps. The tax map in use prior to the revaluation depicted lots 21 and 21b, but not lot 22D. For a number of years prior to the revaluation, Robinson and her predecessors received tax bills from the town for lots 21 and 22D, notwithstanding lot 22D's absence from tax map 13. The town's internal tax records for lot 22D indicate that the "property exists but not shown on tax map." The trial court found that the revised tax maps were in error, with lot 22D "placed on the opposite side of France Road from Mrs. Robinson's actual property."

Also in 1982, the town started sending tax bills on a semi-annual basis. The town sent Robinson tax bills for lots 21 and 22D, plus an additional bill for lot 21b, which the town's tax records identified as a wooded lot of approximately seven and one-half acres. The trial court found that the revised tax map shows lot 21b as being situated on the correct side of the road where Robinson's property is actually located, but "includes less than half of Mrs. Robinson's actual parcel." The tax bills sent to Robinson identified the property on lot 21b only as "land."

Neither Robinson nor her husband acquired any land in the town after 1981. Her husband inquired as to the reason for the third tax bill for lot 21b when Robinson did not acquire or own a wooded lot of that size. Robinson's husband understood town officials to reply "that it must be a mistake, don't worry about it." In May 1983, Robinson received another tax bill for lot 21b, inquired again, and was left with the same impression. The town took no action to correct the error. Robinson heard nothing further from the town regarding lot 21b. The town then listed the owner of lot 21b as "owner unknown." *See* RSA 73:20 (1991).

In September 1986, the town sold lot 21b to the plaintiff at a tax sale pursuant to RSA chapter 80 (1991 & Supp. 1998). On or about September 13, 1988, the town issued a tax deed to the plaintiff. The plaintiff brought an action to quiet title against, among others, Robinson and the town. After trial in August 1997, the trial court quieted title in Robinson. The court found that Robinson's parcel had not been subdivided and the boundary lines had not changed; that she had not engaged in any complex title transfers; and that she consistently paid taxes on what appeared to be her parcel, filed completed property inventories with the town as long as required, and had her husband inquire on what she perceived to be incorrect tax bills. The trial court found that after inquiring about the incorrect tax bills, town officials admitted that there was an error but failed to take any corrective action. The court found that

> [c]onsidering the longstanding history of the parcel, and Mrs. Robinson's conduct regarding the property, the Court concludes that the Town's effort to identify and locate Mrs. Robinson's property was not reasonable. The Town's efforts do not satisfy statutory or due process notice requirements. Accordingly, the Town tax sale of Tax Map 13, Lot 21B did not comply with RSA 80:38-a, and the plaintiff's petition to quiet title is DENIED. Title to Tax Map 13, Lot 21B is quieted in Helen Robinson.

The plaintiff appeals and the town cross-appeals, arguing that the trial court erred by concluding that Helen Robinson did not disclaim the property when she informed the town that she did not own lot 21b.

*I. Notice*

As a preliminary matter, we note that Robinson argues that the trial court found that lot 21b is actually a subset of lot 22D. If her position is correct, which we cannot evaluate because there are insufficient findings on this issue, the tax sale would be void to the extent their physical locations overlap. For purposes of the plaintiff's question in the first appeal, we assume that lots 21b and 22D are separate and distinct parcels, without any overlap in identity or tax payments, and address only whether the requisite notice for a tax sale was provided to Robinson. In the second portion of this opinion, we address the validity of the tax sale to the extent lot 21b is actually part of lot 22D.

The plaintiff and the town argue that the trial court erroneously found that Robinson did not disclaim her interest in 1982, appar-

ently relying on testimony by Robinson's husband that "we don't own any property . . . aside from these 22 acres, and you're billing us for five-plus acres which we don't know anything about." We will not disturb the trial court's findings unless they are unsupported by the evidence or erroneous as a matter of law. *C & M Realty Trust v. Wiedenkeller*, 133 N.H. 470, 476, 578 A.2d 354, 358 (1990). We defer to the trial court's factual findings because that court is in the best position to determine fact. *Id.* Our review of the record, coupled with the town's later concession that "these findings do have some support in the record," precludes us from concluding that the trial court's findings are either unsupported or erroneous. *See id.*

The plaintiff and the town argue that the plaintiff has title to the parcel because the tax sale was conducted in compliance with RSA 80:21. The plaintiff and the town argue that the town reasonably believed and relied on Robinson's alleged disclaimer that she had no interest in lot 21b.

Robinson's husband informed the town that she did not own a lot identified by the town as lot 21b. The town argues that Robinson should have looked at the tax map to determine where her properties were located before she allegedly disclaimed her interest. The town interpreted the communication to constitute a disclaimer, rather than a notification that something was wrong with its tax records. According to the town, having disclaimed his wife's interest, Mr. Robinson "waived any further due process or statutory notice rights they [*sic*] had with respect to this lot." Had Robinson not paid the tax bill on lot 21b and done nothing further, we might agree. However, on the facts of this case, the town was in a superior position to rectify any error. *Cf. Kakris v. Montbleau*, 133 N.H. 166, 178, 575 A.2d 1293, 1299 (1990) (tax sale valid where property dropped from tax rolls, owner failed to pay taxes, and owner did not inquire or investigate as to ownership of the remaining property after selling several portions of the parcel). In contrast to the taxpayer in *Kakris* who did not advise the town that there was a problem after tax bills stopped, Robinson promptly notified the town after she started receiving additional tax bills. Robinson's communication with the town regarding the lot can reasonably be interpreted as questioning the accuracy of the municipality's records, rather than as a disclaimer as the town contends. Robinson could reasonably believe the town's statements that the tax bills were aberrations, a position that the plaintiff accepts. The town, however, argues that Robinson had an obligation to inquire, investigate, and correct the error, something we note that the town failed to do after she identified the error. For some reason, the town treated her

communication as a disclaimer and abated her taxes. There was no evidence indicating that the town ever told Robinson that her communication was a disclaimer of any interest that she might possess in lot 21b. The town never informed her that the abatement on lot 21b was issued by the town, that her property was designated as "owner unknown," or that the property was being sold at a tax sale, all based on her alleged denial of ownership.

The town had recently devised new tax maps, which they acknowledged were inaccurate, and knew that Robinson owned lots 21 and 22D. The town continued to collect taxes on lot 22D even though the town did not place that lot on the tax map until then, in a location inconsistent with Robinson's deed. However, the town did nothing to correct the problem.

Even though the town maintains that Robinson disclaimed her interest in lot 21b, the town had her current address on record with lot 21b and should have provided her actual notice of the abatement as well as the tax sale. *See* RSA 80:21, :38-a. The town was also aware that Robinson owned other properties that were not properly identified on the tax maps. We need not decide how much effort a municipality must expend in identifying the owner of a property before conducting a tax sale because, in this case, the town conducted none after it unilaterally concluded that Robinson disclaimed her interest in the property. The town never attempted to correctly identify the property or its owner, even though town officials knew there were problems with the records. The town never contacted Robinson to inquire where she thought her land was located, and the town never notified Robinson, as record owner of lot 21b according to town tax records before they were changed to reflect "owner unknown," of the impending tax sale. Even now, Robinson claims that her property is incorrectly located on the tax map.

When selling property at a tax sale, a town may not rely exclusively on information provided by a taxpayer but must also utilize official records related to the property. If the town was as certain as it claimed that Robinson was the true owner of the property prior to her alleged disclaimer, the town should have informed her of the tax sale. Robinson could reasonably believe that the additional tax notice on this lot was an administrative error based on the town's apparent acknowledgement that there was an administrative error.

■ In light of the revaluation and the creation of the revised tax maps, the town's acknowledgement that there were errors in tax

map 13 regarding the Robinson property, and its response to Mr. Robinson not to worry about the tax bill for lot 21b, the town had to do more than it did to be reasonable. Without further notice, reclassification of lot 21b to "owner unknown" did not adequately inform Robinson that she had, in the town's view, disclaimed her property, or eliminate the need to notify her of any potential actions regarding this parcel. Until the plaintiff filed the petition to quiet title, Robinson had no actual notice that lot 21b had been sold at a tax sale. *See* RSA 80:21. We affirm the trial court's finding invalidating the tax sale because, on the facts of the case before us, it was fundamentally unfair for the town to sell this piece of property at a tax sale designated as "owner unknown" when Robinson was not given notice of the sale.

## II. Identity of Parcels

After the superior court quieted title in Robinson in the first action, the court ordered Robinson to pay the plaintiff taxes and interest for tax payments made for the 1986 through 1996 tax years. *See* RSA 498:5-d (1997). Robinson moved to reconsider the trial court's order because, *inter alia*, "the evidence clearly revealed [that she] has paid taxes on the parcel of land entitled Tax Map 13, Lot 22D, and therefore the land entitled Tax Map 13[,] Lot 21-b, subject of this action, for all the years that she has owned the land up through the current year of 1997." The trial court denied the motion without addressing the merits of this argument. Robinson appeals, arguing that the property taxes she paid on lot 22D included the taxes due on lot 21b.

RSA 498:5-d, I, provides:

> The court in any action brought under the provisions of RSA 498:5-a shall hear the several claims and determine the rights of the parties, whether derived from deeds, wills or other instruments or courses of title, and may determine the construction of the same, and may render judgment determining the questions and disputes and quieting and settling the title to such property. In any case in which a tax sale is adjudged invalid, the court, as a condition precedent to the entry of a decree setting aside such sale, shall require the claimant of the property in question to pay to the purchaser a sum of money equal to the amount paid by such purchaser at the tax sale in question, including fees prescribed by law and the amounts paid by such purchaser to satisfy any taxes assessed against the property in

> question subsequent to such tax sale, with interest thereon at the legal rate from the date of such sale or date of payment of such subsequent taxes to the date of the decree.

Robinson argues that the purpose of the statute is to compensate a purchaser at a tax sale for funds expended, premised "on the fact the original owner, after losing his ownership interest, was not taxed for the same property again by the Town, and it is appropriate that the tax deed owner should be reimbursed for the taxes paid on behalf of the claiming party."

Our review of the town's tax records with respect to the properties involved leads us to conclude that they are cryptic. The records for lot 21b indicate that this parcel is approximately seven and one-half acres, that there was a 1982 hearing, and that Robinson "claims she doesn't own this land" but "owns other 2." The town's records for lot 22D indicate that the parcel is approximately twenty-three acres and "exists but not shown on tax map." According to the trial court, the town's revised tax maps improperly showed Robinson's lot 22D as being located on the wrong side of France Road.

Even at oral argument, neither the plaintiff nor the town could identify whether lot 21b is actually part of lot 22D. When asked at oral argument where lot 22D is located, counsel for the town replied, "That's a metaphysical question because no one knows where 22D really 'is.'" The plaintiff and the town could not definitively answer whether part or all of lot 21b is actually part of lot 22D. According to the town, where lot 22D is located is still a "mystery."

The trial court did not specifically address Robinson's contention that both she and the plaintiff had paid taxes on lot 21b. The trial court found "[a]t no point has the Defendant Helen Robinson paid any taxes on the property identified as Map 13, Lot 21b."

The plaintiff argues that we should interpret the trial court order as finding that Robinson never paid taxes on the real estate comprising lot 21b, even in light of its finding that lot 21b is part of lot 22D. In contrast, Robinson argues that the trial court found that she never paid the tax bill for the property labeled as lot 21b, but had actually paid taxes on that land under the label of lot 22D. Robinson also cites the trial court's finding that "the land identified by tax card Tax Map 13 Lot 22D, while not on the tax maps as such, is actually made up o[f] land identified as . . . Lot 21b and . . . a portion of . . . Lot 21-a (shown as being owned by McDonough)." Although we agree with Robinson's interpretation of the statute's purpose, we cannot determine whether the statute applies because

the trial court's findings that Robinson paid taxes on lot 22D, did not pay taxes on lot 21b, and that lot 22D includes lot 21b, are inconsistent. Although Robinson paid taxes on lot 22D, we cannot determine whether the taxes paid on lot 22D were sufficient to cumulatively cover: (1) the taxes due on the land located solely in lot 22D, plus (2) land identified as lot 21b but actually encompassed within and overlapping lot 22D, plus (3) any land in lot 21b located outside lot 22D. Accordingly, we vacate the trial court's order directing Robinson to pay the plaintiff for payments made on lot 21b. On remand, the trial court shall determine whether, and to what extent, the town collected taxes on lot 21b twice, once from Robinson in the form of taxes on lot 22D, and again from the plaintiff as taxes on lot 21b.

To the extent the taxes due on lot 22D included the tax obligation on lot 21b, the tax sale is void because Robinson has remained current on her taxes. *See* RSA 80:20. However, to the extent that the trial court finds that the taxes assessed on lot 22D did not include taxes due on lot 21b, then the statute applies and Robinson is obligated to pay the plaintiff any sums due pursuant to RSA 498:5-d, I.

We have reviewed the record with respect to the parties' remaining arguments and find them to be without merit and warranting no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed in part; vacated in part; remanded.*

All concurred.